# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALICIA ANN MAHAR, | ) | Case No. 25-72454-SCS |
| | ) | |
| *Debtor*. | ) | |
| | ) | |
| ALICIA ANN MAHAR, | ) | |
| | ) | APN 25-07035-SCS |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEW REZ LLC D/B/A SHELLPOINT | ) | |
|   MORTGAGE SERVICING, | ) | |
| US NATIONAL BANK NATIONAL | ) | |
|   ASSOCIATION, AS TRUSTEE FOR | ) | |
|   CREDIT SUISSE FIRST BOSTON | ) | |
|   MORTGAGE SECURITIES CORP., CSAP | ) | |
|   MORTGAGE-BACKED PASS-THROUGH | ) | |
|   CERTIFICATES, SERIES 2006-3 | ) | |
|   (AS IDENTIFIED IN ANNEX 3 TO THE | ) | |
|   CREDIT SUISSE DOJ SETTLEMENT), | ) | |
| | ) | Chapter 7 |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

This matter came on for an expedited hearing on November 20, 2025, upon the Plaintiff's

Motion for Injunction to Void and Restrain Enforcement of Foreclosure Sale.  At the conclusion

of the hearing, the Court took this matter under advisement.  The Court has jurisdiction over this

proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b).  Venue is proper pursuant to 28 U.S.C.

§§ 1408 and 1409(a).  This Memorandum Opinion constitutes the Court's findings and conclusions

of law.

## I. Procedural History

This matter represents the second time in the short life of this case that the Plaintiff, Alicia Ann Mahar (the debtor in the underlying bankruptcy case), by counsel, has sought this Court's intervention regarding the postpetition, unstayed foreclosure sale of her real property located at 4345 Charity Neck Road, Virginia Beach, Virginia (the "Property"). *See generally In re Mahar*, Case No. 25-72454-SCS, 2025 WL 3465616 (Bankr. E.D. Va. Dec. 2, 2025) (hereinafter, "*Mahar I*") (denying debtor's motion brought in the bankruptcy case to set aside postpetition, unstayed foreclosure sale due to lack of standing and failure to satisfy procedural requirements for injunctive relief because the motion was not brought as an adversary proceeding as required by Federal Rule of Bankruptcy Procedure 7001(g)). Ms. Mahar, by counsel, filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on October 20, 2025.[1] *See* Case No. 25-72454-SCS, ECF No. 1. The following day, Ms. Mahar, by counsel, initiated the above-captioned adversary proceeding by the filing of her Complaint for Declaratory Relief, Damages, and Injunctive Relief (the "Complaint") against Defendants NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and U.S. Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSAP Mortgage-Backed Pass-Through Certificates, Series 2006-3[2] ("U.S. Bank," and, collectively with Shellpoint, the "Defendants"). ECF No. 1 (hereinafter, "Complaint").[3] Therein, Ms. Mahar alleges that "Shellpoint has refused to engage in

---

[1] The instant case is the eleventh bankruptcy case filed by Ms. Mahar in the Norfolk Division of the Eastern District of Virginia since 2012.

[2] Defendant U.S. Bank was captioned in the Complaint as "U.S. <u>National</u> Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSAP Mortgage-Backed Pass-Through Certificates, Series 2006-3 (as identified in Annex 3 to the Credit Suisse DOJ Settlement)." (emphasis added). The caption of this Memorandum Opinion and the contemporaneously entered order retain the name for U.S. Bank as reflected on the Complaint.

[3] All citations to "ECF No." are to documents filed in the above-captioned adversary proceeding unless otherwise noted.

modification discussions" and that such "actions violate [Shellpoint's] obligations under federal mortgage servicing laws and constitute bad-faith [*sic*] conduct designed to circumvent the consumer-relief [*sic*] provisions applicable to loans in the Credit Suisse RMBS."[4]  Complaint, at 3.  Ms. Mahar references "multiple [loan] modification requests" that she has submitted to the Defendants, including her most recent request submitted prior to the October 21, 2025 foreclosure sale that she alleges "Shellpoint ignored within 30 days of the sale[.]"  *Id.*  Ms. Mahar's Complaint contains three counts based upon the scant allegations therein: an alleged violation of 12 C.F.R. § 1024.41(g); a request for declaratory and equitable relief under 11 U.S.C. § 105(a); and alleged breaches of the duties of good faith and fair dealing.  *Id.*  Ms. Mahar requests this Court "[d]eclare the foreclosure sale void or voidable; [e]njoin Shellpoint from recording or enforcing the trustee's deed; [o]rder Shellpoint to rescind the sale and restore title to [her]; [and] [o]rder Shellpoint to engage in modification review consistent with Regulation X and the DOJ Settlement[.]"  *Id.* at 3-4.

On October 31, 2025, counsel for Ms. Mahar filed a Motion for Injunction to Void and Restrain Enforcement of Foreclosure Sale (the "Motion") in the adversary proceeding, as well as a brief[5] in support of the Motion.  ECF Nos. 6 (hereinafter, "Motion"), 8.  Ms. Mahar requested an expedited hearing on her Motion due to "the continuing risk of irreparable harm through recordation of the trustee's deed and loss of estate property[.]"  ECF No. 18, Renewed Motion for Expedited Hearing on Motion for Injunction to Void and Restrain Enforcement of Foreclosure

---

[4] While the term "Credit Suisse RMBS" is referenced within the Complaint in relation to a settlement between the United States Department of Justice and Credit Suisse, it is not otherwise defined therein.

[5] The content of Ms. Mahar's brief in support of her Motion is substantially similar to the Motion itself.  *Compare* ECF No. 6, *with* ECF No. 8.

Sale, filed Nov. 6, 2025, at 2.[6]  By Order entered November 10, 2025, the Court granted Ms.

Mahar's motion for an expedited hearing and scheduled a hearing on the Motion for November

20, 2025, conditioned upon completion of proper service of the Motion and notice of the hearing,

including the November 17, 2025 response deadline, by Ms. Mahar's counsel by November 12,

2025.  ECF No. 20.  Counsel for Ms. Mahar timely completed proper service of the Motion and

notice of the hearing.  ECF Nos. 22, 23, 24 (notice of hearing and certificates of service).  The

Defendants timely filed a joint response in opposition to the Motion on November 17, 2025.  ECF

No. 26 (hereinafter, "Opposition").

## II.  The Pleadings

As the title of Ms. Mahar's Motion indicates, she seeks entry of an injunction "nullifying

or voiding the foreclosure sale" of the Property conducted on October 21, 2025, and "restraining

any attempt to record or enforce a trustee's deed."  Motion, at 1; *see also id*. at 3.  Ms. Mahar

"seeks an injunction to preserve the status quo and protect the estate's interests pending resolution

of her claims," as well as to prevent the Defendants from taking possession of the Property  *Id*. at

2, 3.  While acknowledging that the automatic stay did not go into effect when she filed the pending

bankruptcy case,[7] Ms. Mahar asserts that the Defendants did not provide the Chapter 7 Trustee

---

[6] Ms. Mahar, by counsel, filed an earlier motion requesting that the Court hear the Motion on an expedited basis (ECF No. 7), which the Court granted on the condition that the Motion and notice of the hearing, including the Court-established response deadline, were properly served pursuant to the Federal Rules of Bankruptcy Procedure.  ECF No. 9, Order Granting Motion for Expedited Hearing, entered Nov. 3, 2025.  The hearing was cancelled due to improper service of the Motion and the failure to provide the response deadline.  ECF No. 15, Order Cancelling Expedited Hearing, entered Nov. 6, 2025.

[7] As set forth in *Mahar I*, Ms. Mahar "acknowledge[d] that the automatic stay under 11 U.S.C. § 362(c)(4) did not go into effect upon the filing of [the bankruptcy] case because [Ms. Mahar] had two pending bankruptcy cases that were dismissed within the year preceding the filing of the [bankruptcy] case."  *Mahar I*, 2025 WL 3465616, at *1 (citing Case No. 25-72454-SCS, ECF No. 7, Emergency Motion to Set Aside Foreclosure Sale for Violation of Court's Exclusive Jurisdiction Over Property of the Estate, at 2).

with notice of, or the opportunity to participate in, the sale. *Id*. She further argues that the foreclosure sale was conducted "in disregard of [her] pending [loan] modification request." *Id*. Ms. Mahar then addresses the legal standard required for and her argument in support of a preliminary injunction. *Id*. at 2-3 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345-46 (4th Cir. 2009), *vacated and remanded on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam)).

The Defendants oppose the relief requested for four reasons. First, the Defendants assert, consistent with Ms. Mahar's concession, that the automatic stay did not arise in this case as to Ms. Mahar and, thus, the foreclosure sale was not precluded. Opposition, at 2-3. The Defendants further argue that the absence of an automatic stay as to Ms. Mahar likewise prevented the creation of a stay as to the Chapter 7 Trustee. *See id*. at 3-5. The Defendants also cite that the Property is no longer property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a) because it has been conveyed by reason of the foreclosure sale and recordation of the foreclosing trustee's deed on November 6, 2025. *Id*. at 5 (citing Exhibit A, Trustee's Deed recorded Nov. 6, 2025, conveying Property to Credit Suisse First Boston Mortgage Securities Corp., CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-3, U.S. Bank National Association, as Trustee (hereinafter, "Trustee's Deed")). Accordingly, the Defendants contend that there is no action for the Court to enjoin. *Id*. Notably, the Defendants point out that "[t]he Foreclosure Sale was conducted by Professional Foreclosure Corporation of Virginia ('PFC'). PFC was not named as a Defendant in this action[.]" *Id*. Finally, the Defendants maintain that equity counsels against granting the relief sought, as the instant bankruptcy filing represents Ms. Mahar's eleventh instance seeking relief

from this Court, and the Property has no equity to support its administration by the Chapter 7

Trustee on behalf of the bankruptcy estate.[8]  *Id*. at 6.

### III.  The Hearing on the Motion

Counsel for Ms. Mahar and counsel for the Defendants appeared at the November 20, 2025

hearing.[9]  During opening dialogue with the Court, counsel for Ms. Mahar concurred with the

representation in the Defendants' response that Professional Foreclosure Corporation of Virginia

conducted the foreclosure sale and is not a named party to the instant proceeding.  ECF No. 30,

Transcript of Nov. 20, 2025 hearing (hereinafter, "Tr."), at 2-3.  Counsel further asserted that

Professional Foreclosure Corporation of Virginia is not a necessary party to the instant motion

because the Defendants are the parties that would need to take the steps to reverse the foreclosure

sale.  *Id*. at 3-4.  Counsel for the Defendants, by contrast, opined Professional Foreclosure

Corporation of Virginia is a necessary party because it was the substitute trustee.  *Id*. at 4.  The

Court also inquired with Ms. Mahar's counsel regarding whether the causes of action underlying

the instant matter became property of the bankruptcy estate upon the filing of the Chapter 7

petition.  *Id*. at 5.  Counsel represented that the causes of action are based upon the alleged illegality

(under federal law, as opposed to bankruptcy law) of the foreclosure sale and asserted they are not

property of the estate.  *Id*. at 6-7; *see also id*. at 8.  He further offered, however, that if Ms. Mahar

prevails on her Complaint, such that the foreclosure deed is "reversed" and the Property returned

to Ms. Mahar, then "the Chapter 7 Trustee could intervene, if he wanted to do so[.]"  *Id*. at 8.

---

[8] The Defendants cite the value of the Property ($1,195,700.00) and the underlying loan balance ($1,353,261.30) as indicated by Ms. Mahar's bankruptcy schedules.  Opposition, at 6 (citing Case No. 25-72454-SCS, ECF No. 1, Voluntary Petition, Schedules, and Statements, at 10, 23).  The Court notes that Ms. Mahar does not indicate the debt owed on the Property is contingent, unliquidated, or disputed.  *See* Case No. 25-72454-SCS, ECF No. 1, Voluntary Petition, Schedules, and Statements, at 23.

[9] The Chapter 7 Trustee did not appear at the hearing.

Counsel likewise admitted that any monetary damages recovered by Ms. Mahar on her Complaint would be property of the bankruptcy estate and subject to administration by the Chapter 7 Trustee. *Id*. at 10-11.  Ms. Mahar's counsel suggested that she has standing to pursue her claims against the Defendants because of the potential "pecuniary gain in the outcome" (in the form of a potential exemption claim) and further, can act in the Chapter 7 Trustee's stead because "we have a trustee that's not doing anything." *Id*. at 10.  Counsel for the Defendants posited, but did not elaborate, that Ms. Mahar did not have standing to obtain the relief sought. *Id*. at 9.

The evidence adduced at the hearing was sparse.  Ms. Mahar provided direct testimony and was cross-examined by counsel for the Defendants.  Ms. Mahar describes the Property as a horse farm from which she operates a nonprofit organization that offers animal-related therapy services to children. *Id*. at 11.  She obtained a loan when she purchased the Property in 2003. *Id*. at 12.  She then refinanced the loan in 2006 and was required to make interest-only payments for the first ten (10) years, with interest accruing at 8.75%. *Id*. at 12-13.  Ms. Mahar sought and was denied a loan modification in 2010. *Id*. at 13.  In total, Ms. Mahar has requested a loan modification twenty-three (23) times, including her most recent attempt in September 2025. *Id*. at 13-15.  Ms. Mahar confirmed she has filed for bankruptcy protection many times, each in response to a foreclosure notice, including the underlying pending bankruptcy case. *Id*. at 14.  Ms. Mahar further indicated that she could not relocate her farm operations and the numerous animals she keeps thereon. *Id*. at 16.  On cross-examination, Ms. Mahar admitted she may have filed as many as eleven (11) bankruptcy petitions and received a discharge in one case.[10] *Id*. at 16-17.  In at least two (2) of her

---

[10] *See supra* n.1 (noting that the Court's records reflect Ms. Mahar has filed for bankruptcy protection eleven (11) times since 2012.  Contrary to Ms. Mahar's testimony (Tr. at 17), the case in which she received her discharge was not her first bankruptcy case, but rather, her third such case.  *See* Case No. 12-70273-SCS (a Chapter 7 case filed with the assistance of counsel and dismissed in 2012 due to Ms. Mahar's failure to attend the Section 341 meeting of creditors); Case

prior unsuccessful cases, Ms. Mahar brought actions against her lender and servicer. *Id*. at 17-18.

Upon inquiry by the Court, Ms. Mahar admitted that she has made no payments on the loan for

her Property for at least twelve (12) years. *Id*. at 21.

Following Ms. Mahar's testimony, her counsel requested that the Court take judicial notice

that the loan at issue was encompassed by a 2019 Department of Justice settlement as set forth in

a document attached to the Complaint. *Id*. at 21. The Court declined to take judicial notice of the

document or its contents, finding that the document was not issued by this Court, had not been

authenticated, and, by admission by counsel for Ms. Mahar, was not the full and complete

document. *Id*. at 21-23. No additional evidence was introduced by Ms. Mahar, and counsel for

the Defendants offered no evidence. *Id*. at 23.

Counsel for Ms. Mahar addressed the evidence in support of the factors enumerated in

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), regarding her request for a

preliminary injunction. *Id*. at 24-26. Finally, counsel conceded that the foreclosing trustee's deed

has been recorded, thus conveying the Property to "Credit Suisse First Boston." *Id*. at 23 (citing

Trustee's Deed). In light of the deed's recordation (which the Motion had sought to enjoin), Ms.

Mahar's counsel concluded his argument by suggesting that the Court could instead issue an

injunction to prevent U.S. Bank from selling the Property. *Id*. at 28.

---

No. 13-73870-FJS (a Chapter 13 case filed with the assistance of counsel and dismissed in 2013 for failure to file required schedules, statements, and Chapter 13 plan); Case No. 14-73422-FJS (a Chapter 7 case filed in September 2014 with the assistance of counsel and in which Ms. Mahar received a discharge). While Ms. Mahar's discharge in that case included any personal liability on the loan at issue, the "secured claim and the corresponding lien survive the bankruptcy discharge unaffected." *In re Parris*, Case No. 23-72011-SCS, 2025 WL 2713141, at *14 n.46 (Bankr. E.D. Va. Sept. 23, 2025) (citing 11 U.S.C. §§ 506(d)(2), 522(c)(2), 524(a)(1); *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992); *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)).

Counsel for the Defendants argued that Ms. Mahar did not meet her burden to demonstrate her entitlement to an injunction. *Id*. at 29. On rebuttal, Ms. Mahar's counsel reiterated his argument as to the irreparable harm she would allegedly suffer if the status quo is not maintained while the underlying Complaint is adjudicated. *Id*. at 30.[11]

## IV. Conclusions of Law

While neither party addressed the critical threshold issue of standing directly or in depth, it remains incumbent upon the Court to determine if Ms. Mahar has standing to bring the instant Motion. *Pub. Int. Legal Found., Inc. v. Wooten*, No. 25-1128, 2026 WL 119879, at *2 (4th Cir. Jan. 16, 2026) (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1988)); *Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011); *Yarid v. Ocwen Loan Serv'g*, Civil Action No. 3:17-cv-484, 2018 WL 3631883, at *2 (E.D. Va. July 31, 2018) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001); citing *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006) (unpublished)). As the Plaintiff, Ms. Mahar has the burden to demonstrate standing. *Yarid*, 2018 WL 3631883, at *2 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)).

In *Mahar I*, the Court determined that Ms. Mahar lacks a pecuniary interest in the distribution of assets of the bankruptcy estate, and thus, lacked standing to request that the Court (a) void or otherwise set aside the postpetition, unstayed foreclosure sale; (b) enjoin the recordation or enforcement of the foreclosing trustee's deed; and (c) restore title of the Property to Ms. Mahar and the bankruptcy estate. *Mahar I*, at *1, 4-5. Accordingly, to the extent that Ms. Mahar seeks

---

[11] Subsequent to the hearing in the instant matter, the Defendants, by counsel, filed a Motion to Dismiss the above-captioned adversary proceeding. *See* ECF No. 32, Motion to Dismiss Pursuant to FRCP 12(b)(6), filed Nov. 26, 2025.

the same relief here (*see* Motion, at 1, 3) as she sought in the earlier proceeding, the law of the case doctrine applies, and the conclusions reached in *Mahar I* are applicable in the instant matter and are incorporated herein by reference. *See What Hurts, LLC v. Volvo Penta of the Ams., LLC*, Civil No. 2:22cv552, 2024 WL 3466478, at *1 (E.D. Va. Jan. 29, 2024) ("[T]he law of the case doctrine means that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)).  While there are certain exceptions to the law of the case doctrine, Ms. Mahar does not argue that any of them should apply here, and in any event, the Court finds none are applicable. *Zaklit v. Glob. Linguist Sols., LLC*, 53 F. Supp. 3d 835, 846 (E.D. Va. 2014) (noting three exceptions to the law of the case doctrine: "'(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice'") (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009)). Rather, the Court considers *Mahar I* to be properly decided such that any arguments to challenge standing to seek the above-cited relief based upon the reasoning in *Mahar I* are negated.

The remaining relief sought in the Motion consists of Ms. Mahar's request to enjoin the Defendants from "taking possession of the Property" and "[m]aintain[ing] the status quo pending resolution of this adversary proceeding."  Motion, at 3.  The Court finds that the reasoning of *Mahar I* likewise applies to these requests, and the Court also incorporates by reference here the conclusions of law contained in *Mahar I*.

Furthermore, the Court finds that Ms. Mahar does not have standing to bring the instant Motion based upon the information presented to the Court.  Section 541 of the Bankruptcy Code provides that the bankruptcy estate is created upon the commencement of a bankruptcy case.

10

Property of the estate is, necessarily, broadly defined under Section 541 to "bring 'anything of value that . . . debtors have in[to] the estate.'" *Terry v. Evans* (*In re Evans*), 527 B.R. 228, 234 (Bankr. E.D. Va. 2015) (quoting H.R. Rep. 95-595, at 176 (1977); citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983)). Subject to certain, inapplicable exceptions, property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). These property interests include tangible and intangible property and causes of action. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 342 (4th Cir. 2013) (citing 11 U.S.C. § 541(a); *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999); *Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 869 (4th Cir. 1991)). Additionally, estate property "includes '[a]ny interest in property that the estate acquires after the commencement' of a bankruptcy case," which likewise may include legal claims and causes of action. *Logan v. JKV Real Est. Servs.* (*In re Bogdan*), 414 F.3d 507, 512 (4th. Cir. 2005) (quoting 11 U.S.C. § 541(a)(7)). Property acquired by the estate postpetition, as distinguished from that which may be acquired by the debtor personally after the petition date, is that "'property created with or by property of the estate[.]'" *In re Boyd*, 618 B.R. 133, 147 (Bankr. D.S.C. 2020) (quoting *TMT Procurement Corp. v. Vantage Drilling Co.* (*In re TMT Procurement Corp.*), 764 F.3d 512, 525 (5th Cir. 2014)); *see also Callahan v. Roanoke Cnty.* (*In re Townside Constr.*), 582 B.R. 407, 414 (Bankr. W.D. Va. 2018) (citing *TMT Procurement Corp.*, 764 F.3d at 524). To determine whether postpetition-acquired property constitutes property of the bankruptcy estate, the Fourth Circuit Court of Appeals requires a court to assess whether such property is "'sufficiently rooted in the pre-bankruptcy past.'" *Andrews v. Riggs Nat'l Bank* (*In re Andrews*), 80 F.3d 906, 910 (4th Cir. 1996) (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966) (discussing *Segal* test in the context of 11 U.S.C. § 541(a)(6)); *see also Field v. Transcon. Ins. Co.*, 173 F.3d 424, 1999 WL

102052, at *1 (4th Cir. Feb. 16, 1999) (unpublished) (quoting *Segal*, 382 U.S. at 380) (analyzing

11 U.S.C. § 541(a)(1) in light of *Segal* test and affirming United States District Court decision

finding that the bankruptcy estate includes claims that accrue postpetition that arise from

prepetition events); *Stackhouse v. Plumlee* (*In re Plumlee*), 236 B.R. 606, 611-12 (E.D. Va. 1999)

(concluding that postpetition recovery of settlement proceeds arising from claims sufficiently

rooted in prepetition actions as well as postpetition actions were property of the bankruptcy estate

(citing *Field v. Transcon. Ins. Co.*, 219 B.R. 115, 118-120 & n.9 (E.D. Va. 1998), *aff'd*, 173 F.3d

424 (4th Cir. 1999) (unpublished))); *Callahan*, 582 B.R. at 414.

The filing of a petition under Chapter 7 of the Bankruptcy Code "not only creates a

bankruptcy estate but also relinquishes control of [a debtor's] assets and liabilities to the estate."

*Haydu v. Tidewater Cmty. Coll.*, 268 F. Supp. 3d 843, 846 (E.D. Va. 2017). The bankruptcy estate

is represented by a trustee. 11 U.S.C. § 323(a). Therefore, "[i]f a cause of action is part of the

estate of the bankrupt then the trustee alone has standing to bring that claim" since the trustee has

the capacity, under the Bankruptcy Code, to sue and be sued.[12] *Nat'l Am. Ins. Co.*, 187 F.3d at

441 (citing *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988));

*Richman v. First Woman's Bank* (*In re Richman*), 104 F.3d 654, 657 (4th Cir. 1997) (citing 11

U.S.C. § 323; *Moneymaker v. CoBen* (*In re Eisen*), 31 F.3d 1447, 1451 n.2 (9th Cir. 1994)).[13]

Such authority is bestowed upon a Chapter 7 trustee as a logical extension of his statutory duty to

"collect and reduce to money the property of the estate for which such trustee serves . . . ." 11

---

[12] A Chapter 7 trustee's authority to sue on behalf of the bankruptcy estate is further addressed in
Federal Rule of Bankruptcy Procedure 6009, which provides that only the "trustee or debtor in
possession may . . . commence and prosecute in any tribunal an action or proceeding on the estate's
behalf." Fed. R. Bankr. P. 6009(b).
[13] Section 323(b) of the Bankruptcy Code provides "[t]he trustee in a case under this title has
capacity to sue and be sued."

U.S.C. § 704(a)(1).  Property of the estate remains under the trustee's control until administered

by the trustee, abandoned, or exempted from the bankruptcy estate.[14]  *See* 11 U.S.C. §§ 522(b),

554; *Chia v. Wells Fargo Bank, N.A.*, No. 1:09cv670, 2009 WL 9052196, at *1 (E.D. Va. Aug. 3,

2009).

As it pertains to claims held by the bankruptcy estate against another entity, "the decision

whether to pursue a claim or not is vested within the trustee's discretion."  *Detrick v. Panalpina,*

*Inc.*, 108 F.3d 529, 535 (4th Cir. 1997) (citing *Louden v. Fed. Land Bank of Louisville* (*In re*

*Louden*), 106 B.R. 109, 112 (Bankr. E.D. Ky. 1989)).  In the exercise of a trustee's judgment and

discretion, the trustee may prosecute a matter himself, allow the debtor to prosecute a matter on

behalf of the estate, or decline to pursue claims.  *See id*. at 535-36 (citing Fed. R. Bankr. P. 6009;

*Am. Foods, Inc. v. Dezauche*, 74 F. Supp. 681, 682 (W.D.N.Y. 1947); 1 Robert E. Ginsburg &

Robert D. Martin, Ginsburg & Martin on Bankruptcy § 12.06[G] (4th ed. 1996)).

In evaluating whether Ms. Mahar has standing to bring the instant Motion, the Court is

unfortunately faced with disparate representations from Ms. Mahar (in addition to her failure to

affirmatively address standing given her burden to demonstrate same).  On the one hand, Ms.

Mahar lists no cause of action against the Defendants in her bankruptcy schedules or statements

(nor has she amended those documents to do so), which suggests her belief that the causes of action

set forth in the Complaint are postpetition in nature (unless, of course, the failure to list such

potential claims was, instead, an unfortunate mistake).  *See* Case No. 25-72454-SCS, ECF No. 1,

Voluntary Petition, Schedules, and Statements, at 15 (listing no claims against third parties or other

contingent, unliquidated claims among her assets), 55 (indicating on her statement of financial

---

[14] Only property of the estate that is scheduled may be exempted or abandoned. *See Shin v. Lee*,
550 F. Supp. 3d 313, 320 (E.D. Va. 2021) (citing *Pullman v. United States* (*In re Pullman*), 319
B.R. 443, 445 (Bankr. E.D. Va. 2004); *In re Sutton*, 10 B.R. 737, 739 (Bankr. E.D. Va. 1981)).

affairs that she was not a party to any lawsuits or other court actions within the year prior to filing her petition).  This theory is supported by Ms. Mahar's counsel's denial at the hearing that the underlying causes of action arising from the foreclosure sale are property of the bankruptcy estate. Tr. at 8.

Conversely, Ms. Mahar's counsel acquiesces that, to the extent Ms. Mahar successfully obtains an injunction and reversal of the foreclosure sale pursuant to her Complaint, the Chapter 7 Trustee could intervene (*see id.*)—presumably meaning the trustee could administer the Property as property of the estate.  This presumption is confirmed by her counsel's subsequent comment that if Ms. Mahar recovers monetary damages, such funds "would be property of the estate, ultimately."  *Id*. at 10; *see also id*. at 10-11 ("I would not disagree that Mr. Dickinson [*sic*] would ultimately be the owner of the claim, the money damages claim, if one was so ordered by this Court.").  Finally, counsel for Ms. Mahar agreed with the Court that "[a]ny cause of action that can be asserted by the debtor on a pre-petition basis is subject to the dominion and control of the Chapter 7 [T]rustee until he elects otherwise or the Court so orders." *Id*. at 10.  Further, the Court observes that the twenty-three (23) loan modification attempts referenced by Ms. Mahar in her testimony (*see* Tr. at 13-15) and in the Complaint (*see* Complaint, at 3) all occurred prepetition, as did the referenced denials of those requests (*Id*. at 13, 15),[15] the alleged "dual tracking"[16] circumstance (*see* Complaint, at 3; Tr. at 23-24), and the alleged breaches of the duties of good faith and fair dealing (*see* Complaint, at 3).  The sole event that appears to have occurred postpetition is the foreclosure sale. *See id.* at 2; Motion, at 1.

---

[15] Although not presented as evidence, counsel for Ms. Mahar represented that all twenty-three (23) of her loan modification requests were denied.  Tr. at 26.

[16] Ms. Mahar describes "dual tracking" as the continuation of foreclosure proceedings before completing a review of a loan modification request.  Complaint, at 3; *see also* Tr. at 23-24.

Other courts addressing analogous facts have concluded that causes of action asserted by debtors against lenders regarding postpetition foreclosure sales were "sufficiently rooted" in the prepetition past to bring the causes of action into the bankruptcy estate, including in the Western District of Virginia, which adjudicated such circumstance in *Callahan v. Roanoke County* (*In re Townside Construction*), 582 B.R. 407 (Bankr. W.D. Va. 2018).[17]  In *Callahan*, the Chapter 7 debtors filed two lawsuits in state court against the lender and foreclosing trustee (among other parties) without the authorization or participation of the Chapter 7 trustee.[18]  *Id*. at 411-12.  The first lawsuit alleged certain problems with the advertising and notice of a pending foreclosure sale, in addition to other allegations against the foreclosing trustee.  *Id*. at 411.  The second action sought to rescind completed, postpetition foreclosure sales and requested damages for breaches of fiduciary duties, invasion of privacy rights, and various conspiracy allegations.  *Id*. at 412.  The Chapter 7 Trustee sought to settle various claims with the defendants in each of the lawsuits, as he asserted that the causes of action therein were property of the bankruptcy estate.  *Id*.  The debtors and the lender stipulated that the notes and associated deeds of trust were made twelve years prepetition.  *Id*. at 415.  The Court found that much of the conduct underlying the allegations in the debtors' lawsuits predated the bankruptcy filings under Chapter 11 as well as the eventual conversion of both debtors' cases to ones under Chapter 7.  *Id*.  Neither debtor disclosed any potential cause of action in their schedules or to the Chapter 7 trustee nor amended their schedules to make such disclosures.  *Id*.  Further, the debtors did not dispute the loan balances due or raise the potential of any offsets when agreeing to the lender's receipt of relief from the automatic stay.

---

[17] The matter came before the Court upon the Chapter 7 trustee's joint motion to approve a compromise in the two separate but related bankruptcy cases of Townside Construction, Inc. and Landmark Properties, Inc. *See Callahan*, 582 B.R. at 408.

[18] Relief from the automatic stay was granted with the consent of both debtors prior to the initiation of the foreclosure proceedings and the ensuing litigation.  *Callahan*, 582 B.R. at 410.

*Id*.  While the Court found that some of the alleged conspiratorial acts took place postpetition and post-conversion, it concluded that "the causes of action alleged by the [d]ebtors are 'sufficiently rooted' in the [d]ebtors' pre-bankruptcy pasts with [the lender] to fall within the *Segal* test, and further that the alleged causes of action sufficiently flow from the [d]ebtors' prepetition assets such as to fall within the scope of 11 U.S.C. § 541(a)(1) and (7)."  *Id*. at 416.  As such, the Court concluded that the Chapter 7 trustee had standing to pursue a settlement of those claims with the defending parties.  *Id*. at 416.

Employing similar reasoning, the Bankruptcy Appellate Panel for the Ninth Circuit affirmed the bankruptcy court's conclusion that a debtor's claims related to the postpetition foreclosure sale belonged to the bankruptcy estate, and thus the debtor did not have standing to pursue them.  *Solano v. Magnum Prop. Invs.* (*In re Solano*), BAP No. CC-19-1258-GFS, 2020 WL 4280662, at *1-3 (B.A.P. 9th Cir. July 24, 2020), *aff'd*, 854 F. App'x 781 (9th Cir. 2021) (unpublished).  In *Solano*, the *pro se* debtor initiated an adversary proceeding asserting claims including fraud, racketeering, and declaratory relief against the purchaser of his foreclosed property, as well as the purchaser's principal and its attorneys.  *Id*. at *2.  Determining that the analysis depended upon whether the claims asserted by the debtor were postpetition-acquired property of the estate pursuant to Section 541(a)(7), the Court examined whether the claims were "'(1) . . . created with or by property of the estate; (2) acquired in the estate's normal course of business; or (3) otherwise [ ] traceable to or aris[ing] out of any prepetition interest included in the bankruptcy estate.'"  *Id*. at *5 (quoting *MacKenzie v. Neidorf* (*In re Neidorf*), 534 B.R. 369, 372 (B.A.P. 9th Cir. 2015)).  Pursuant to this analysis, the Bankruptcy Appellate Panel found that any causes of action arising from the postpetition sale of the debtor's property (the ownership of which was undisputably part of the debtor's bankruptcy estate) became part of the estate pursuant to

Section 541(a)(7). *Id*. (citing *Ashurst Land & Cattle, LLC v. Rancho Mountain Props., Inc.*, No. 12-CV-1328-BEN, 2013 WL 2631338, at *3 (S.D. Cal. June 10, 2013), *aff'd*, 609 F. App'x 500 (9th Cir. 2015) (unpublished); *Smith v. Morris R. Greenshaw Oil and Gas, Inc.* (*In re Greenshaw Energy, Inc.*), 359 B.R. 636, 642 (Bankr. S.D. Tex. 2007)).  Accordingly, the panel found no error was committed by the bankruptcy court in concluding that only the Chapter 7 trustee, not the debtor, had standing to pursue any valid claims related to the foreclosure. *Id*. at *3, 6.  Further, the panel rejected the debtor's arguments that the earlier termination of the automatic stay resulted in the abandonment of the property and the foreclosure sale removed the property from the bankruptcy estate. *Id*. at *6.  In do so, the Bankruptcy Appellate Panel determined that "[a]t the time of the alleged wrongful foreclosure, the [p]roperty remained property of the estate" because there had been no formal abandonment by the trustee; the prior "order granting stay relief [did] not cause a *de facto* abandonment of property, and it [did] not extinguish the estate's interest in such property." *Id*. (citing *Catalano v. Comm'r*, 279 F.3d 682, 686 (9th Cir. 2002); *Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001)).

The instant Motion represents Ms. Mahar's attempt to secure a temporary injunctive remedy while she pursues adjudication of her Complaint that sets forth claims against the Defendants based upon events arising from her ownership of the Property.  The Property was unquestionably property of the bankruptcy estate upon the filing of the case, despite Ms. Mahar's admitted non-existence of the automatic stay.  Ms. Mahar's historical interactions with the Defendants concerning her Property are also undeniable based upon her testimony concerning her innumerable attempts to modify the loan on the Property.  Further, there is no dispute that the Defendants' alleged transgressions, including the denial of almost two dozen loan modification requests and the alleged "dual tracking" and consequent alleged breaches of duty occurred prior

17

to the bankruptcy filing.[19]  To be sure, the resulting foreclosure sale occurred postpetition, albeit

barely, as the record in the underlying bankruptcy case indicates the foreclosure sale took place

less than twenty-four (24) hours after the filing of the Chapter 7 petition.  *See* Case No. 25-72454-

SCS, ECF No. 7, Emergency Motion to Set Aside Foreclosure Sale for Violation of Court's

Exclusive Jurisdiction Over Property of the Estate, at 1 (noting that the foreclosure sale was

scheduled for 1:00 p.m. the day following the petition filing).  The timing of the sale, though, is of

little significance in light of *Segal*'s "sufficiently rooted" test where, as here, the grievances would

not exist but for Ms. Mahar's prepetition ownership of the Property.  Therefore, based upon the

current record, and as in the *Callahan* and *Solano* cases, the Court is hard-pressed to find that the

claims embodied in the causes of action[20] contained in the Complaint arose from other than assets

of the bankruptcy estate and thus are "sufficiently rooted in the pre-bankruptcy past" so as to bring

them into the underlying bankruptcy estate under 11 U.S.C. § 541(a).  *Segal*, 382 U.S. at 380.

Further, the record in the underlying bankruptcy case reflects that the Chapter 7 Trustee filed a

Request for Asset Notice on November 11, 2025, and requested the Clerk send notice to all

creditors and parties in interest that there may be assets available for distribution in Ms. Mahar's

case.  ECF No. 30.  As of the date of the issuance of this Opinion, the Chapter 7 Trustee has neither

abandoned any assets of the bankruptcy estate nor filed any pleading to declare his consent to Ms.

Mahar's prosecution of this adversary proceeding.  Accordingly, the causes of action are under the

---

[19] Based upon the timing of the foreclosure sale, at most a minimal amount of activity constituting
the allegedly violative acts occurred postpetition.  However, as stated herein, an action's temporal
nature does not control the required analysis.

[20] Counsel for Ms. Mahar iterated that the causes of action arise under federal law as opposed to a
"bankruptcy proceeding *per se*."  Tr. at 7.  The Court finds this assertion to be of no moment;
whether a cause of action is part of the bankruptcy estate does not depend upon the body of law to
which it relates.

exclusive control of the Chapter 7 Trustee.  As such, Ms. Mahar does not have standing to bring the Motion.

To be sure, the Fourth Circuit recognizes that "[i]n certain instances, courts relax the general rule that only the Chapter 7 trustee has standing before the bankruptcy court and grant standing to certain other interested parties" but simultaneously cautions that such authorization could result in unnecessary litigation that does not serve the interests of the estate or its creditors. *Richman v. First Woman's Bank* (*In re Richman*), 104 F.3d 654, 657 (4th Cir. 1997).  Mere status as a party in interest, though, does not provide an automatic right to participate. *Id*. at 658.  Rather, a party must satisfy the requirements for the specific basis by which it seeks to participate. *Id*.  To this end, Ms. Mahar's counsel asserts she may prosecute her Complaint due to the inaction of the Chapter 7 Trustee.  Tr. at 10.  To the extent Ms. Mahar insinuates that the trustee has, by his silence, consented to Ms. Mahar's prosecution of the Complaint for the benefit of the estate, so as to provide the Plaintiff with a basis to claim some type of derivative standing to bring the instant Motion, such implied argument must be rejected.

To begin, the proposition that silence equals acquiescence in the instant context is unavailing under the earlier analysis concerning Section 541.  Further, Ms. Mahar has provided no legal or evidentiary support for such argument.  Moreover, it is questionable at best whether the principles of derivative standing (which are generally discussed in the context of creditors attempting to assume a non-statutory fiduciary role in a Chapter 11 case) even apply in a Chapter 7 case, and indeed, well-reasoned case law in this district finds that it does not.  In *SunTrust Bank v. Matson* (*In re CHN Construction, LLC*), 531 B.R. 126 (Bankr. E.D. Va. 2015), a creditor of the Chapter 7 estate sought permission to bring causes of action on behalf of the bankruptcy estate (which causes of action the Chapter 7 trustee declined to prosecute). *Id*. at 127.  Recognizing the

general rule "that only trustees or debtors in possession, and not creditors, can pursue avoidance

actions[,]" Judge Huennekens likewise cited two exceptions discussed by the Fourth Circuit Court

of Appeals in *Scott v. National Century Financial Enterprises, Inc.* (*In re Baltimore Emergency

Services II, Corp.*), 432 F.3d 557 (4th Cir. 2005). *SunTrust Bank*, 531 B.R. at 131. In *Scott*, the

Court of Appeals observed, in the context of a Chapter 11 proceeding, that other circuits have

granted derivative standing to creditors or creditors' committees where a trustee or debtor in

possession either "unreasonably refuses to bring suit on its own" or grants consent. *Scott*, 432

F.3d at 560 (citations omitted). In reaching his decision that "derivative standing is not appropriate

in chapter 7 cases[,]" Judge Huennekens concluded that neither of these exceptions applied in the

Chapter 7 context. *SunTrust Bank*, 531 B.R. at 131-33. Where trustee consent is not forthcoming,

Judge Huennekens found "[t]he 'unreasonable withholding of consent' test . . . breaks down

entirely in the chapter 7 context[]" considering the trustee's fiduciary and statutory estate

administration responsibilities within the scope of his or her reasonable business judgment. *Id*. at

132. Judge Huennekens is not alone in his conclusion, with support found both within this Circuit

and other jurisdictions. *See, e.g.*, *Amore v. Ridgely* (*In re Doc's Truck Ctr., LLC*), Adv. No. 3:20-

ap-25, 2021 WL 4156262, at *3-4 (Bankr. N.D. W. Va. Sept. 13, 2021) (concurring with Judge

Huennekens' analysis and dismissing third-party complaint for lack of standing); *Reed v. Cooper*

(*In re Cooper*), 405 B.R. 801, 811-13 (Bankr. N.D. Tex. 2009) (differentiating derivative standing

in the Chapter 7 context, finding that the Chapter 7 trustee is best positioned to pursue interests on

behalf of the bankruptcy estate); *see also Webster v. De Nagy-Unyom* (*In re Yelverton*), Adv. No.

09-10048, 2012 WL 1229752, at *3-4 (Bankr. D.D.C. Apr. 12, 2012) (calling into question the

appropriateness of allowing Chapter 7 debtor to pursue avoidance claims under derivative standing

theory when trustee requested dismissal of same). While the Court acknowledges the contrary

view discussed in other decisions,[21] the Court finds the reasoning of Judge Huennekens and similar

decisions more persuasive for the reasons stated herein.  Further, even if the concept of derivative

standing did apply to creditors in the Chapter 7 context, its application to debtors would be

antithetical to the entire Chapter 7 process, which exclusively grants to the trustee the ability to

administer the bankruptcy estate.  Accordingly, the Court finds Ms. Mahar cannot invoke the

principles of derivative standing here.

## V.  Conclusion

The Fourth Circuit Court of Appeals has cautioned that "'preliminary injunctions are

extraordinary remedies involving the exercise of very far-reaching power to be granted only

sparingly and in limited circumstances.'  A court greatly exceeds its power, and may effect grave

harm, by granting such a remedy to a party that has not demonstrated standing to request it." *Scott*,

432 F.3d at 563 (quoting *Sun Microsystems, Inc. v. Microsoft Corp.* (*In re Microsoft Corp.*

*Antitrust Litig.*), 333 F.3d 517, 524 (4th Cir. 2003)).  Accordingly, the Court has given great

consideration to the issue of Ms. Mahar's standing.  Under bankruptcy law, the choice of chapter

has a dramatic impact on the relationship of a debtor to property of the estate.  By choosing to file

a voluntary petition under Chapter 7, the Bankruptcy Code is clear that a debtor is divested of

control of all property of the estate and that such estate is controlled by the assigned trustee.  Ms.

Mahar filed, with the assistance of counsel, her petition under Chapter 7 of the Bankruptcy Code.

With that decision, she voluntarily placed the totality of her assets and liabilities under the Chapter

---

[21] *See, e.g.*, *PW Enters., Inc. v. North Dakota Racing Comm'n* (*In re Racing Servs., Inc.*), 540 F.3d 892, 898 & n.6 (8th Cir. 2008) (finding "no reason to differentiate between [proceedings under Chapters 7 and 11 of the Bankruptcy Code] for the purpose of the derivative standing analysis" and collecting decisions by the Second, Third, Fifth, Sixth, Seventh, and Ninth Circuit Courts of Appeal); *In re With Purpose, Inc.*, Case No. 23-30246-MVL7, 2025 WL 271469, at *32 (Bankr. N.D. Tex. Jan. 22, 2025) (discussing distinct fact pattern where trustee sought to generate estate funds by selling estate's cause of action, with the goal of joint prosecution with buyer).

7 Trustee's control and subjected them to his reasonable business judgment and discretion for purposes of administration. Further, by electing to file for Chapter 7 relief, Ms. Mahar ceded her ability to pursue any causes of action that are part of the bankruptcy estate. Thus, in addition to lacking standing to pursue injunctive relief because she does not have a pecuniary interest in the distribution of assets of the bankruptcy estate for the reasons stated in *Mahar I*, the causes of action comprising the Complaint are "sufficiently rooted in the pre-bankruptcy past" and constitute property of the bankruptcy estate under the Chapter 7 Trustee's exclusive control. Ms. Mahar has not proffered any additional reasoning to support her standing here, and the Court has found none exists based upon the record. Accordingly, Ms. Mahar's requests for relief in the Motion, including the imposition of a preliminary injunction, must be denied because she lacks standing to pursue her Motion.

A separate Order will be contemporaneously issued consistent with this Memorandum Opinion.

The Clerk shall deliver copies of this Memorandum Opinion to counsel for the Plaintiff; counsel for the Defendants; and the Chapter 7 Trustee in the underlying bankruptcy case.

IT IS SO ORDERED.

Entered this **21st day** of **January, 2026**, at Norfolk, in the Eastern District of Virginia.


Jan 21 2026

/s/ Stephen C St-John

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

Entered On Docket:   Jan 21 2026