# UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
#### NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALICIA ANN MAHAR, | ) | Case No. 25-72454-SCS |
| | ) | |
| *Debtor*. | ) | |
| | ) | |
| ALICIA ANN MAHAR, | ) | |
| | ) | APN 25-07035-SCS |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEW REZ LLC D/B/A SHELLPOINT | ) | |
| MORTGAGE SERVICING, | ) | |
| US NATIONAL BANK NATIONAL | ) | |
| ASSOCIATION, AS TRUSTEE FOR | ) | |
| CREDIT SUISSE FIRST BOSTON | ) | |
| MORTGAGE SECURITIES CORP., CSAP | ) | |
| MORTGAGE-BACKED PASS-THROUGH | ) | |
| CERTIFICATES, SERIES 2006-3 | ) | |
| (AS IDENTIFIED IN ANNEX 3 TO THE | ) | |
| CREDIT SUISSE DOJ SETTLEMENT), | ) | |
| | ) | Chapter 7 |
| *Defendants*. | ) | |
| | ) | |

## MEMORANDUM OPINION

The above-captioned adversary proceeding came before the Court on March 26, 2026, for

hearings upon the Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure

12(b)(6) filed November 26, 2025 (ECF No. 32),[1] and the Plaintiff's Opposition thereto filed

November 28, 2025 (ECF No. 34); the Plaintiff's Motion to Reconsider Memorandum Opinion

---

[1] All citations to "ECF No." relate to documents filed in the above-captioned adversary proceeding
unless otherwise noted.

and Order Denying Preliminary Injunction filed February 13, 2026 (ECF No. 46), and the

Defendants' Response in Opposition filed March 19, 2026 (ECF No. 56); and the Court's Order

for Plaintiff to Show Cause Why Pending Complaint Should Not Be Dismissed for Lack of

Jurisdiction or, in the Alternative, Why Court Should Not Permissively Abstain from Adjudication

of Complaint entered March 2, 2026 (ECF No. 52), the Plaintiff's Brief in Response filed March

5, 2026 (ECF No. 55), and the Defendants' Brief in Support of Dismissal filed March 20, 2026

(ECF No. 57).  At the conclusion of the hearings, the Court took the aforementioned matters under

advisement.  This Memorandum Opinion constitutes the Court's findings and conclusions of law.

## I.  Procedural History

The Court has previously written two opinions concerning the efforts by the Plaintiff,

Alicia Ann Mahar (the debtor in the underlying bankruptcy case), by counsel, to have this Court

intervene regarding the postpetition, unstayed foreclosure sale of real property located at 4345

Charity Neck Road, Virginia Beach, Virginia (the "Property").  *See generally In re Mahar*, Case

No. 25-72454-SCS, 2025 WL 3465616 (Bankr. E.D. Va. Dec. 2, 2025) (hereinafter, "*Mahar I*")

(denying Ms. Mahar's motion in the bankruptcy case to set aside postpetition, unstayed foreclosure

sale due to lack of standing and failure to satisfy procedural requirements for injunctive relief as

required by Federal Rule of Bankruptcy Procedure 7001(g)); *Mahar v. NewRez, LLC*, Adv. Proc.

No. 25-07035-SCS, 2026 WL 173351 (Bankr. E.D. Va. Jan. 21, 2026) (hereinafter, "*Mahar II*")

(concluding that Ms. Mahar did not have standing to pursue motion for injunction).[2]  While

repetitive of the procedural history set forth in the two prior opinions, the Court nonetheless deems

it necessary to recite the record of this adversary proceeding in support of the findings and

conclusions herein.

---

[2]  Both *Mahar I* and *Mahar II* are final orders of this Court.

Ms. Mahar, by counsel, filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on October 20, 2025, her eleventh bankruptcy case since 2012. *See* Case No. 25-72454-SCS, ECF No. 1; *see Mahar II*, 2026 WL 173351, at *1 n.1. The following day, Ms. Mahar, by counsel, filed her Complaint for Declaratory Relief, Damages, and Injunctive Relief (the "Complaint") against Defendants NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and U.S. Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSAP Mortgage-Backed Pass-Through Certificates, Series 2006-3[3] ("U.S. Bank," and, collectively with Shellpoint, the "Defendants"), which initiated this adversary proceeding. ECF No. 1 (hereinafter, "Complaint"); *see Mahar II*, 2026 WL 173351, at *1. Ms. Mahar describes Defendant Shellpoint as servicer of the loan on the Property and Defendant U.S. Bank as "claim[ing] ownership or enforcement rights of the loan that was securitized within one of the Credit Suisse RMBS listed in Annex 3 of the DOJ Settlement."[4] Complaint, at 2.

As factual predicate for her contentions, Ms. Mahar acknowledges that the automatic stay did not take effect upon the filing of the underlying bankruptcy case because she had two pending bankruptcy cases that were dismissed within one year preceding the filing of the underlying

---

[3] The Complaint lists Defendant U.S. Bank in the caption as "U.S. <u>National</u> Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSAP Mortgage-Backed Pass-Through Certificates, Series 2006-3 (as identified in Annex 3 to the Credit Suisse DOJ Settlement)." Complaint, at 1 (emphasis added). As with *Mahar II*, the caption of this Memorandum Opinion and the contemporaneously entered order retains the name for U.S. Bank as reflected on the Complaint. *Mahar II*, 2026 WL 173351, at *1 n.2.

[4] The term "Credit Suisse RMBS" is referenced within the Complaint only in relation to an apparent settlement in 2017, purportedly between Credit Suisse and the United States Department of Justice, but is not otherwise defined therein. *See* Complaint, at 2. Ms. Mahar asserts that the settlement "required $2.8 billion in consumer relief through loan modifications, principal forgiveness, and housing support." *Id*. An unauthenticated excerpt of the settlement is attached to Ms. Mahar's Complaint. *See id*. (exhibit). The Court further notes that during a prior hearing, Ms. Mahar's counsel referred to the year of the settlement as 2019. *Mahar II*, 2026 WL 173351, at *3 (citing ECF No. 30, Transcript of Nov. 20, 2025 hearing, at 21).

bankruptcy case.  *Id*. (citing 11 U.S.C. § 362(c)(4)).[5]  She further asserts that Shellpoint and its foreclosure trustee conducted a foreclosure sale of the Property on October 21, 2025, despite notice that she filed her bankruptcy case the previous day and "prior to any court determination on a motion to impose stay or injunctive relief."[6]  *Id*.  Ms. Mahar additionally recounts her submission of "multiple [loan] modification requests to the Defendants," including the most recent such request submitted prior to the foreclosure sale of the Property, which Ms. Mahar alleges "Shellpoint ignored within 30 days of the sale[.]"  *Id*. at 3.

Ms. Mahar asserts that "Shellpoint has refused to engage in modification discussions" and that such "actions violate [Shellpoint's] obligations under federal mortgage servicing laws and constitute bad-faith [*sic*] conduct designed to circumvent the consumer-relief [*sic*] provisions applicable to loans in the Credit Suisse RMBS."  *Id*.  The Complaint contains three counts based upon the scant allegations therein: an alleged violation of 12 C.F.R. § 1024.41(g); a request for declaratory and equitable relief under 11 U.S.C. § 105(a); and alleged breaches of the duties of good faith and fair dealing.  *Id*.; *see also Mahar II*, 2026 WL 173351, at *1.  Ms. Mahar requests this Court "[d]eclare the foreclosure sale void or voidable; [e]njoin Shellpoint from recording or enforcing the trustee's deed; [o]rder Shellpoint to rescind the sale and restore title to [her]; [and] [o]rder Shellpoint to engage in modification review consistent with Regulation X and the DOJ Settlement[.]"  Complaint, at 3-4; *Mahar II*, 2026 WL 173351, at *1.

---

[5] In *Mahar I*, the Court further noted Ms. Mahar's admission "that 11 U.S.C. § 362(c)(4) indicates no stay arose as to the Chapter 7 Trustee upon the filing of the petition in this case."  *Mahar I*, 2025 WL 3465616, at *3 n.10 (citing Case No. 25-72454-SCS, ECF No. 27, Memorandum of Law in Support of Debtor's Standing and Analysis of Automatic Stay Under 11 U.S.C. § 362(c)(4), at 2).

[6] Neither Ms. Mahar, the Chapter 7 Trustee, nor any other party in interest filed a motion to impose the automatic stay pursuant to 11 U.S.C. § 362(c)(4) in the underlying bankruptcy case at any time.

On October 31, 2025, counsel for Ms. Mahar filed a Motion for Injunction to Void and Restrain Enforcement of Foreclosure Sale (the "Motion for Injunction"). ECF No. 6. The Defendants opposed the Motion for Injunction. *See* ECF No. 26; *Mahar II*, 2026 WL 173351, at *2. The Court conducted a hearing on the Motion for Injunction on an expedited basis on November 20, 2025. *Mahar II*, 2026 WL 173351, at *2. The Court took the matter under advisement, and for the reasons stated in *Mahar II*, entered January 21, 2026, the Court concluded that Ms. Mahar did not have standing to pursue the Motion for Injunction. *See generally id.*; *see also* ECF No. 40, Order Denying Plaintiff's Motion for Injunction to Void and Restrain Enforcement of Foreclosure Sale for Lack of Standing.[7]

While the Motion for Injunction was under advisement, the Defendants, by counsel, filed a motion seeking dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereinafter, the "Motion to Dismiss"). ECF No. 32, filed Nov. 26, 2025. Ms. Mahar, by counsel, filed her opposition to the Motion to Dismiss on November 28, 2025. ECF No. 34. The Court conducted a pretrial conference on the Complaint pursuant to Federal Rule of Bankruptcy Procedure 7016 on January 8, 2026, which counsel for the parties attended. ECF No. 38. At the pretrial conference, the Court established a hearing date on the Motion to Dismiss.[8] *Id.*

Subsequent to the pretrial conference and the issuance of *Mahar II*, Ms. Mahar, by counsel, filed her Motion to Reconsider Memorandum Opinion and Order Denying Preliminary Injunction (hereinafter, the "Motion to Reconsider"). ECF No. 46, filed Feb. 13, 2026. The Court scheduled a hearing on the Motion to Reconsider for the same date and time as the hearing on the Motion to

---

[7] While the decision in *Mahar II* was pending, the Court issued the Memorandum Opinion and contemporaneous order in *Mahar I*, 2025 WL 3465616, on December 2, 2025.
[8] Counsel for the Defendants failed to timely file the requisite notice of hearing for the initial hearing date supplied by the Court for the Motion to Dismiss. ECF No. 43. Upon receipt of the Defendants' written request, the Court issued a new hearing date. ECF No. 48.

Dismiss.  ECF No. 50.  The Defendants, by counsel, filed a response in opposition to the Motion

to Reconsider on March 19, 2026.  ECF No. 56.

As recited in the Court's Order for Plaintiff to Show Cause Why Pending Complaint

Should Not Be Dismissed for Lack of Jurisdiction or, in the Alternative, Why Court Should Not

Permissively Abstain from Adjudication of Complaint (hereinafter, the "Order to Show Cause"),

entered March 2, 2026, several events occurred in the underlying bankruptcy case after the

Complaint was filed:

> The Chapter 7 Trustee filed a Request for Asset Notice on November 11, 2025, and
> requested the Clerk send notice to all creditors and parties in interest that there may
> be assets available for distribution in the case.  Case No. 25-72454-SCS, ECF No.
> 30.  On January 21, 2026, the Plaintiff (who is the Debtor in the underlying
> bankruptcy case) received her Chapter 7 discharge.  Case No. 25-72454-SCS, ECF
> No. 46.  One week later, on January 28, 2026, the Chapter 7 Trustee filed his Notice
> of Intent to Abandon regarding real property located at 4345 Charity Neck Road,
> Virginia Beach, Virginia, and "[c]ontingent and unliquidated causes of action"
> against the above-captioned Defendants "arising from wrongful foreclosure,
> mortgage servicing violations, and related federal and state law claims[.]"  Case
> No. 25-72454-SCS, ECF No. 48.  The Chapter 7 Trustee represented that these
> assets were abandoned "on the grounds that there are liens against said property of
> greater value than the property itself and/or that the Trustee believes that any
> attempt at liquidation by the Trustee would fail."  *Id*.  No objections were filed to
> the Notice of Intent to Abandon within the requisite response period, and
> accordingly, pursuant to the notice, the enumerated assets are now abandoned to
> the Plaintiff/Debtor.

ECF No. 52, at 3.[9]  Based upon the aforementioned events in Ms. Mahar's bankruptcy case and

mindful that this Court's jurisdiction "is grounded in, and limited by, statute," the Court issued the

Order to Show Cause pursuant to 28 U.S.C. § 157(b)(3) to require Ms. Mahar, through her counsel,

to appear and explain why jurisdiction exists such that this Court may adjudicate the Complaint.

---

[9] The entry of Ms. Mahar's discharge in this case extinguished her personal liability, if any, that
remained as to the Property following entry of the Chapter 7 discharge she received in Case No.
14-73422-FJS on January 12, 2015.  *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (quoting
11 U.S.C. § 524(a)(1)); *see* 11 U.S.C. §§ 506(d)(2), 522(c)(2), 524(a)(1); *Dewsnup v. Timm*, 502
U.S. 410, 418 (1992).

*Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995) ("The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."); ECF No. 52, at 4.[10]  The Court additionally directed Ms. Mahar, by her counsel, to show cause why, "if this Court has jurisdiction over the underlying Complaint, . . . the Court should not exercise its discretion and permissively abstain from adjudication of the Complaint pursuant to 28 U.S.C. § 1334(c)(1) so as to allow [Ms. Mahar] to pursue her claims in another forum."  ECF No. 52, at 4-5.  Finally, the Order to Show Cause established a schedule for the submission of responsive briefs by each party, as well as the Chapter 7 Trustee.[11]  *Id*. at 5.  Counsel for Ms. Mahar filed a Brief in Response to the Order to Show Cause on March 5, 2026.  ECF No. 55.  Counsel for the Defendants filed a Brief in Support of Dismissal on March 20, 2026.  ECF No. 57.

## II.  The Pleadings

### A.  The Motion to Dismiss and Opposition Thereto

The Defendants assert that the Complaint must be dismissed because the relief sought therein cannot be granted for several reasons.  As to Ms. Mahar's request that the Court declare the foreclosure sale either void or voidable, the Defendants argue that the automatic stay did not take effect as to either Ms. Mahar (as she admits) or the Chapter 7 Trustee when the underlying bankruptcy case was filed.  *See* ECF No. 32, at 2-5 (citing numerous cases).  As such, nothing precluded the postpetition conduction of the foreclosure sale.  *Id*.  The Defendants further represent that, following the foreclosure sale, a deed conveying the Property to U.S. Bank was executed on November 4, 2025, which deed was recorded on November 6, 2025.  *Id*. at 5-6.  Accordingly, the

---

[10] The Court further notes that neither party raised nor addressed the issue of this Court's jurisdiction in any of their pleadings prior to the issuance of the Order to Show Cause.

[11] The Chapter 7 Trustee declined to file a responsive brief.

Defendants assert that the Property is no longer property of the estate, and there remains no action for the Court to enjoin. *Id*. at 6.

The Defendants also argue that Ms. Mahar did not timely submit her most recent modification application pursuant to 12 C.F.R. § 1024.41. *Id*. at 2. Therefore, Shellpoint was not obligated to review such application under the aforementioned regulation. *Id*. Moreover, the Defendants contend that Ms. Mahar's reliance on the 2017 settlement between Credit Suisse and the United States Department of Justice is misplaced because she was not a party to the settlement, thus precluding her standing to enforce it. *Id*. Even if Ms. Mahar had standing to enforce the agreement, the Defendants contend that the settlement required certain "Consumer Relief . . . 'to be completed no later than December 31, 2021'" and therefore, "any claim which Ms. Mahar may have standing to bring related to the [a]greement[] would have been barred by the 3-year statute of limitations . . . and would have expired, at the latest, on January 2, 2025, many months before the initiation of the current action." *Id*. Finally, the Defendants argue that principles of equity do not support the relief requested because the balance of the loan on the Property ($1,353,261.30) exceeds the Property's value ($1,195,700.00) based upon Ms. Mahar's bankruptcy schedules. *Id*. at 6 (citing Case No. 25-72454-SCS, ECF No. 1, Voluntary Petition, Schedules, and Statements, at 10, 23). Therefore, the Chapter 7 Trustee would not have administered the Property for the benefit of Ms. Mahar's creditors. *Id*.

Ms. Mahar opposes the Motion to Dismiss, arguing that the "broad scope" of 11 U.S.C. § 105(a) allows the Court to review, on an equitable basis, "a wrongful foreclosure conducted in violation of federal law[] and . . . the post-petition transfer of the Property, which may be avoided or declared voidable by the Court[]" despite the non-existence of the automatic stay. ECF No. 34,

8

at 4-5.[12]  In support of this assertion, but without citation to specific authority, Ms. Mahar offers

that "[b]ankruptcy courts routinely use § 105 to undo or enjoin wrongful creditor conduct that

threatens the integrity of the estate—even when no automatic stay applies." *Id*. at 5.  Next, relying

on state law, Ms. Mahar argues that every contract in Virginia carries implied covenants of good

faith and fair dealing, which include a prohibition on depriving the other party of their contractual

benefits.  *Id*.  Ms. Mahar argues that her Complaint states a plausible claim under this premise

pursuant to the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v.

Iqbal*, 556 U.S. 662 (2009), because she has alleged that the Defendants "engaged in misleading

loss-mitigation practices, obstructed [her] efforts to cure [the] default, and engineered a foreclosure

rather than deal fairly."  ECF No. 34, at 5.  Claims such as these, she asserts, have been upheld in

the Eastern District of Virginia.  *Id*. (citing *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp.

2d 460, 465-66 (E.D. Va. 2013); *Bourdelais v. JPMorgan Chase Bank, N.A.*, Civil Action No.

3:10CV670, 2012 WL 5404084 (E.D. Va. Nov. 5, 2012)).[13]

---

[12] At the March 26, 2026 hearing, the Court advised Ms. Mahar's counsel that one of the cases he cited in support of this proposition does not exist.  ECF No. 61, Transcript of Mar. 26, 2026 hearing, at 9-10.  Despite extensive efforts, the Court was unable to locate any case by the alleged name, and its case citation within the response returned a completely unrelated case that is criminal in nature.  *See* ECF No. 34, at 4 (citing the non-existent case titled In re Coastal Carolina Fruit Company).

[13] While the noted case law does stand for the proposition that a cause of action sounding in contract for a breach of the implied covenants of good faith and fair dealing is recognized in Virginia, the cited opinions do not "uphold" such claims.  The *Stoney Glen* and *Bourdelais* decisions, rather, concluded that such claim was adequately pleaded to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Stoney Glen*, 944 F. Supp. 2d at 462, 469; *Bourdelais*, 2012 WL 5404084, at *1-2, 10.  *Bourdelais* further highlights several opinions in this district that have "held that the duty of good faith and fair dealing does not extend to the review and processing of loan modifications, absent an express provision indicating otherwise." *Bourdelais*, 2012 WL 5404084, at *5 (citing *Chance v. Wells Fargo Bank, N.A.*, No. 3:12CV320-JRS, 2012 WL 4461495 (E.D. Va. Sept. 25, 2012); *De Vera v. Bank of Am., N.A.*, No. 2:12cv17, 2012 WL 2400627 (E.D. Va. June 25, 2012); *Bennett v. Bank of Am., N.A.*, No. 3:12CV34-HEH, 2012 WL 1354546 (E.D. Va. Apr. 18, 2012); *Correll v. Bank of Am., N.A.*, No. 2:11cv477, 2012 WL 348594 (E.D. Va. Feb. 2, 2012)).

The bulk of Ms. Mahar's opposition addresses the Defendants' arguments regarding her loan modification attempt.  *See id*. at 2-4.  First, Ms. Mahar argues that she has stated a valid claim pursuant to 12 C.F.R. § 1024.41(g) because she alleged that she "submitted a complete loan modification application[.]"  *Id*. at 2.  She has also pleaded that, despite acknowledging its receipt, Shellpoint "failed to evaluate the application" and instead "proceeded to foreclosure while the complete application remained pending[,]" a purported, improper "dual-tracking" circumstance.[14]  *Id*.  Ms. Mahar maintains that any dispute regarding the timeliness of her loan modification application is factual in nature, which cannot be resolved by the adjudication of the Motion to Dismiss.  *Id*.  Further, she asserts that any issue concerning the timing of the application's submission "does not negate [her] Regulation X claim nor defeat the broader federal servicing-violation allegations pled in the Complaint."  *Id*.  Ms. Mahar contends that, taking the allegations in the Complaint as true, her Complaint states a plausible claim that the Defendants violated multiple provisions of 12 C.F.R. Part 1024 as well as certain statutory duties.  *Id*. at 3.  Specifically, she asserts the Defendants "failed to identify any missing documents; represented or implied that review was ongoing; and foreclosed without ever issuing a decision, denial, or appeal notice[]" on her loan modification application.  *Id*.  Finally, Ms. Mahar declares that, contrary to the Defendants' claims, she is  not "bring[ing] a cause of action 'under'" the 2017 settlement between Credit Suisse and the United States Department of Justice.  *Id*. at 4.  Instead, she offers the settlement in support of the "factual context" that the loan on the Property was "subject to

---

[14] In support of this argument, Ms. Mahar's counsel cites three cases for which the United States District Court and Westlaw case numbers, as well as the decision dates, are incorrect.  *See* ECF No. 34, at 2 (cases of *Jennings v. RoundPoint Mortgage Servicing Corporation*; *Mastin v. Ditech Financial, LLC*; and *Heflin v. PHH Mortgage Corporation*).  The Court advised Ms. Mahar's counsel of the discovery of the incorrect case information at the March 26, 2026 hearings.  ECF No. 61, at 9-10.  The Court further advised counsel of a fourth case name contained in the pleading that was nonexistent (the citation for which related to a criminal case).  *Id*. at 10; *see* n.12, *supra*.

heightened modification and consumer-relief [*sic*] protocols, and that Defendants' servicing behavior departed from those standards[,]" regardless of any concerns about the timely submission of her loan modification application. *Id*.

### B.  The Motion to Reconsider and Opposition Thereto

As iterated above, the Court concluded that Ms. Mahar did not have standing to pursue her Motion for Injunction in the above-captioned adversary proceeding. *See generally Mahar II*, 2026 WL 173351. The Court reasoned that, in addition to "lack[ing] a pecuniary interest in the distribution of assets of the bankruptcy estate," Ms. Mahar could not pursue the requested relief because the Property and any related causes of action were property of the bankruptcy estate and "under the exclusive control of the Chapter 7 Trustee." *Id.* at *4-5, 8, 10. In her Motion to Reconsider, Ms. Mahar requests the Court "[r]eevaluate [her] request for injunctive relief" pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024 because the factual basis upon which the Court based its ruling no longer exists. ECF No. 46, at 1-2. Specifically, Ms. Mahar argues that she now has standing to pursue injunctive relief because the causes of action set forth in her Complaint revested in her upon their abandonment by the Chapter 7 Trustee. *Id*. (citing Case No. 25-72454-SCS, ECF No. 48, Notice of Intent to Abandon).

The Defendants oppose Ms. Mahar's reconsideration request, asserting that the Trustee's abandonment of the Property and the issuance of the Chapter 7 discharge "clearly demonstrate that the real property at issue is not necessary for administration of the Chapter 7 Estate[.]" ECF No. 56, at 6-7. In support, the Defendants proffer substantially the same arguments contained in their Motion to Dismiss: that the automatic stay did not take effect as to either Ms. Mahar or the Chapter 7 Trustee when the underlying bankruptcy case was filed; that the Property has been transferred, and there is nothing to enjoin; and equitable principles do not support the relief requested.

11

*Compare generally* ECF No. 56 (Response in Opposition to Motion to Reconsider), *with* ECF No.

32 (Motion to Dismiss).  Accordingly, the Court incorporates here the above recitation of these

arguments by the Defendants from their Motion to Dismiss.

C.  Responsive Pleadings to Court's Order to Show Cause

Ms. Mahar maintains that "related to" jurisdiction is assessed upon commencement of a

proceeding by determining whether the outcome of a proceeding "could conceivably have any

effect on the estate being administered."  ECF No. 55, at 1-2 (citing *Bestwall LLC v. Off. Comm.*

*of Asbestos Claimants* (*In re Bestwall LLC*), 71 F.4th 168 (4th Cir. 2023), *cert. denied*, 144 S. Ct.

2519 (2024); *Valley Hist. Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 836 (4th Cir. 2007);

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  Ms. Mahar contends that "related to"

jurisdiction existed when the above-captioned adversary proceeding was filed for three reasons.

First, this Court has ruled that the causes of action constituted property of the bankruptcy estate.

*Id*. at 2 (referencing *Mahar II*, 2026 WL 173351, at *8).  Second, the "alleged wrongful conduct,"

*i.e.*, the foreclosure sale and deed recordation, occurred "while the estate was under this Court's

jurisdiction."  *Id*.  Taken together with her third reason—the Chapter 7 Trustee's declaration that

the underlying bankruptcy case constituted an asset case such that creditors would possibly receive

a distribution—Ms. Mahar argues that the "related to" jurisdictional requirements were met when

the adversary proceeding was filed.  *Id*.  To that end, Ms. Mahar asserts that "[s]hould litigation

end favorably[,] the [Chapter 7] Trustee may very well determine that proceeds or the asset could

be property of the estate."  *Id*.

Ms. Mahar distinguishes the instant matter from four particular cases on the basis that the

latter involve either adversary proceedings that were initiated post-abandonment or post-

confirmation when the bankruptcy estate no longer existed; or a finding that the result would not

12

affect creditor distributions or administration of the bankruptcy estate. *Id*. at 3 (citing *Brooks v. U.S. Dep't of Hous. and Urb. Dev.* (*In re Brooks*), Adv. Proc. No. 17-07031, 2017 WL 6016297 (Bankr. W.D. Va. Dec. 4, 2017); *Harlan v. Rosenberg & Assocs., LLC* (*In re Harlan*), 402 B.R. 703 (Bankr. W.D. Va. 2009); *Suntrust Bank v. Roberson* (*In re Baseline Sports, Inc.*), 393 B.R. 105 (Bankr. E.D. Va. 2008); *Huennekens v. Walker* (*In re S. Int'l Co.*), 165 B.R. 815 (Bankr. E.D. Va. 1994)).  By contrast, Ms. Mahar contends that the causes of action asserted here were property of the bankruptcy estate when this proceeding was filed and while the estate was being administered by the Chapter 7 Trustee. *Id*.  Further, she argues that the requisite "nexus . . . existed at filing and was actively litigated in the Court," the case has not been "fully consummated," and "bankruptcy interests remain." *Id*.

Ms. Mahar maintains that the Chapter 7 Trustee's abandonment of assets affects standing but "does not retroactively eliminate the jurisdictional nexus" or automatically divest the Court of jurisdiction when pending litigation "could still affect creditor distributions." *Id*. at 2 (citing *Sharif v. IndyMac Bank* (*In re Sharif*), 411 B.R. 276 (Bankr. E.D. Va. 2008)).  To this end, Ms. Mahar cites the *Sharif* decision as "confirm[ing] that abandonment does not automatically eliminate jurisdiction where the proceeding remains intertwined with bankruptcy administration." *Id*. at 3.

Ms. Mahar urges this Court to refrain from permissive abstention if it concludes that it maintains "related to" jurisdiction and relies on five factors in support of this argument. *Id*. at 4. First, this Court has conducted hearings and issued an opinion analyzing standing and matters regarding property of the bankruptcy estate. *Id*.  Moreover, the Complaint is predominantly centered on federal law, no jury demand has been made, and there is no parallel state court proceeding. *Id*.  Finally, this matter is inextricably intertwined with the procedural history of the underlying bankruptcy case. *Id*.  Ms. Mahar requests, if the Court determines that abstention is

13

appropriate, a ruling "that any dismissal [is] without prejudice; [is] expressly limited to jurisdictional grounds; . . . that no merits determination [be] made; [and] [p]reserve [her] ability to pursue her federal claims in a court of competent jurisdiction." *Id*. at 4-5.

The Defendants agree with Ms. Mahar that jurisdiction is determined at the time an action is filed and that neither the abandonment of estate property nor entry of a discharge obviate any such jurisdiction. ECF No. 57, at 1-2. Nonetheless, the Defendants contend that jurisdiction did not exist when the instant Complaint was filed because the Property, being valued at less than the unchallenged security interest thereon, provided no potential value for the Chapter 7 Trustee to administer as part of the bankruptcy estate, as demonstrated by the trustee's eventual abandonment of the Property. *Id*. at 2-3. The instant case, Defendants reason, is distinguishable from the facts in both *In re Sharif* and *In re Painter*, where the validity of claims against real property were challenged, and the invalidation of the security interests would have affected forthcoming distributions to other creditors. *Id*. at 2 (citing generally *In re Sharif*, 411 B.R. 276; *Painter v. First Fed. Sav. and Loan Ass'n of South Carolina* (*In re Painter*), 84 B.R. 59 (Bankr. W.D. Va. 1988)). Considering the facts in the present case, however, the Defendants maintain that "related to" jurisdiction should not be construed so broadly as to find jurisdiction here simply because Ms. Mahar is a debtor. *Id*. at 2-3.

Regarding abstention, the Defendants assert this Court should decline to exercise "related to" jurisdiction even if it does exist because this Court cannot enter a final judgment in a non-core proceeding without the parties' consent; therefore, judicial economy would be aided by abstention. *Id*. at 3-4 (citing *In re Sharif*, 411 B.R. at 281 n.3). Further, there is an "absent necessary party"— Professional Foreclosure Corporation of Virginia—that would need to be joined to this litigation to ultimately rescind the foreclosure sale. *Id*. at 4. Finally, the administration of the bankruptcy

14

case will be unaffected by abstention because "the claims are remote and unrelated to the bankruptcy case." *Id.*

### III.  The Hearings on the Motions and Order to Show Cause

### A.  The Motion to Dismiss

Beginning with the Motion to Dismiss, counsel for the Defendants reiterated Ms. Mahar's failure to allege that she submitted her loan modification request more than thirty-seven (37) days prior to the foreclosure sale to successfully establish a violation of 12 C.F.R. § 1024.41.  ECF No. 61, Transcript of Mar. 26, 2026 hearing, at 4 (hereinafter, "Tr.").  Rather, the Complaint alleges Ms. Mahar made her request within the thirty-day period prior to the foreclosure, which timing absolved the loan servicer from considering the application.  *Id.* at 5-6 (citing Complaint ¶ 15).  Further, despite Ms. Mahar's assertion in her response to the Motion to Dismiss that other federal regulations were violated, the Complaint neglects to specifically set forth those alleged requirements.  *Id.* at 7.  Thus, because the Complaint fails to "raise more than the mere suspicion that there could be a cause of action[,]" as required by *Iqbal* and *Twombly*, Count I of the Complaint should be dismissed.  *Id.* at 6-7 (referencing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Counsel for the Defendants argued that the requests for declaratory and equitable relief in Count II should likewise be dismissed because the deed memorializing the Property's transfer resulting from the foreclosure sale has been recorded, and therefore nothing remains to be enjoined. *Id.* at 9.  In addition, because the parties agree that the automatic stay did not take effect when Ms. Mahar filed the instant bankruptcy case, the stay could not have been violated so as to serve as a basis to void the sale or otherwise find it voidable.  *Id.* at 8-9.  Finally, counsel for the Defendants asserted that Ms. Mahar's failure to name Professional Foreclosure Corporation of Virginia as a

15

party is a fatal flaw pursuant to Federal Rule of Civil Procedure 12(b)(6) because that entity undertook the action sought to be undone—the foreclosure sale. *Id*. at 8. Therefore, because Ms. Mahar failed to name a necessary party, full relief could not be afforded by the Court, although the Defendants acknowledged that this flaw could be cured via a motion to either amend the Complaint or add the foreclosing entity. *Id*.

Counsel for Ms. Mahar conceded that the loan modification request was not submitted thirty-seven (37) days prior to the foreclosure sale, but rather, was submitted within thirty (30) days of the sale. *Id*. at 20-21 (citing Complaint ¶ 15). Regardless of such timing issue, however, counsel asserted that the basis for the relief sought should encompass the history of Ms. Mahar's interactions with the Defendants and the latter's failure to modify the loan on the Property despite Ms. Mahar's twenty (20) requests to do so. *Id*. at 17, 19-20. Based on this premise, counsel for Ms. Mahar urged the Court to "infer[] in Count I" that the Defendants engaged in abusive practices and violated several duties under 12 C.F.R. Part 1024 by making misrepresentations or providing contradictory information, failing to acknowledge loan modification applications, and evading the protections of the aforementioned federal regulation. *Id*. at 16-17. Counsel buttressed this argument by asserting that the Defendants engaged in behavior vis-à-vis Ms. Mahar similar to that which resulted in the 2017 settlement between Credit Suisse and the United States Department of Justice. *See id*. at 17-19. Even though admittedly not a party to that settlement, Ms. Mahar's counsel contended that the Defendants should have bestowed treatment upon her equivalent to the settlement benefits received by homeowners under the settlement, which purportedly included a loan modification. *Id*. Counsel for Ms. Mahar made scant mention of Counts II and III of the Complaint other than to restate the relief sought therein pursuant to 11 U.S.C. § 105 and alleged violations of implied covenants of good faith and fair dealing. *Id*. at 21. Lastly, Ms. Mahar's

16

counsel disagreed that Professional Foreclosure Corporation of Virginia is a necessary party, asserting instead that only U.S. Bank (the Property's current owner) can unwind the conveyance. *Id*. at 22.

On rebuttal, counsel for the Defendants countered that neither the United States Code, 12 C.F.R. Part 1024, nor the settlement involving Credit Suisse entitled a borrower to a loan modification. *Id*. at 23. Rather, Count I of Ms. Mahar's Complaint should be dismissed for failure to allege the appropriate timing element concerning the submission of the loan modification request. *Id*. at 23, 25-26. Moreover, the Defendants asserted that Court permission to sell the Property was not required because the automatic stay did not exist, which must result in the dismissal of Count II. *Id*. at 23-24. As to Count III, the Defendants argued that because Ms. Mahar did not timely submit her modification request, they could not have violated 12 C.F.R. Part 1024 and, as a result, did not breach any duty of good faith or fair dealing. *Id*. at 25-26. Finally, the Defendants reemphasized that Professional Foreclosure Corporation of Virginia is a necessary party to the instant litigation because it conveyed the Property to U.S. Bank, the ultimate purchaser at the foreclosure sale. *Id*. at 24.

B. The Motion to Reconsider

The parties offered little argument, and no legal basis, beyond the contents of their written pleadings regarding reconsideration of the earlier decision determining Ms. Mahar did not have standing to pursue her Motion for Injunction. *See id*. at 26-30. Counsel for the Defendants contended that nothing remains to be enjoined, and there was no basis to enjoin U.S. Bank from evicting Ms. Mahar as there was no allegation that U.S. Bank was pursuing such relief. *Id*. at 29. In response, Ms. Mahar's counsel clarified that maintaining the status quo and ensuring U.S. Bank

17

did not transfer the Property while these matters were being adjudicated would be appropriate. *Id*. at 29-30.

C.   The Court's Order to Show Cause

Ms. Mahar's counsel reemphasized the arguments made in her response to the Order to Show Cause. Counsel maintained that jurisdiction must be assessed at the time the Complaint was filed (versus the date of the instant hearing). *Id*. at 32. At both the time the Complaint was filed and when the wrongful actions occurred, counsel argued that the Property was property of the bankruptcy estate. *Id*.; *see also id.* at 33. In turn, the estate will be affected if Ms. Mahar either receives a monetary judgment or secures avoidance of the sale, as either scenario would yield assets for administration by the Chapter 7 Trustee. *Id*. at 32. Counsel for Ms. Mahar admitted, however, that the Complaint did not request a monetary judgment because "we didn't know. But the [P]roperty was worth more than 1 million dollars, and the bank bought it for 950,000 dollars. And so there's equity in in [*sic*] what would be a short sale opportunity" that the Chapter 7 Trustee could pursue if Ms. Mahar recovers the Property. *Id*. Therefore, Ms. Mahar asserted that the "conceivable effect" test mandated by the Fourth Circuit Court of Appeals is satisfied. *Id*. Counsel further argued that the Chapter 7 Trustee's abandonment of the Property does not, without more, dispossess this Court of jurisdiction, a principle he asserts is best illustrated in *Sharif v. IndyMac Bank* (*In re Sharif*), 411 B.R. 276 (Bankr. E.D. Va. 2008). Tr. at 33. Finally, counsel for Ms. Mahar implored the Court not to abstain if jurisdiction exists, in part because the matter has been pending before it for several months. *Id*. at 31, 34. However, if the Court determines that this case should be dismissed, Ms. Mahar requested such dismissal be without prejudice. *Id*. at 38.

Counsel for the Defendants likewise reiterated their written arguments concerning jurisdiction. *See id*. at 34-36. Counsel further asserted that Ms. Mahar's speculation that equity

18

exists presupposed a position the lender has not espoused (the willingness to accept an amount less than that which is owed in full satisfaction of the debt), and such presumption cannot support a finding of jurisdiction. *Id*. at 34. Additionally, the Defendants contended that Ms. Mahar has argued inconsistent bases for her grievances, asserting both that the wrongful acts occurred during the pendency of this case and that the numerous unsuccessful loan modification attempts prior to this case resulted in violations of the applicable regulations. *Id*. at 36. As such, the Defendants argued jurisdiction does not exist, and the case should be dismissed. *Id*. Finally, if jurisdiction exists, counsel for the Defendants advocated for the Court to permissively abstain in the interest of judicial economy since an answer has not yet been filed, no discovery has occurred, and other than the passage of time, any resulting delay would be insignificant. *Id*. at 36-37.

## IV.  Conclusions of Law

### A.  Subject Matter Jurisdiction of the Bankruptcy Court

The United States District and Bankruptcy Courts are courts of limited jurisdiction. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *Educ. Credit Mgmt. Corp. v. Kirkland* (*In re Kirkland*), 600 F.3d 310, 315 (4th Cir. 2010) (quoting *Canal Corp. v. Finnman* (*In re Johnson*), 960 F.2d 396, 399 (4th Cir. 1992)). The United States District Court has "original and exclusive jurisdiction of all cases under title 11" as well as "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a), (b). The United States Bankruptcy Court derives its jurisdiction from the United States District Court. 28 U.S.C. §§ 157(a), (b)(1); *Valley Hist. Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007). In the Eastern District of Virginia, the United States District Court has referred all cases under Title 11, as well as all proceedings "arising under" or "arising in or related

to cases under" Title 11 to this Court pursuant to 28 U.S.C. § 157 and the General Order of Reference dated August 15, 1984.

As set forth in this Court's Order to Show Cause, Judge Novak has well-described the distinctions among the three aforementioned types of proceedings.

> "A claim 'aris[es] under Title 11' if it is a cause of action created by the Bankruptcy Code, and which lacks existence outside the context of bankruptcy." *Educ. Credit Mgmt. Corp. v. Kirkland* (*In re Kirkland*), 600 F.3d 310, 316 (4th Cir. 2010) (citing *Aheong v. Mellon Mortg. Co.* (*In re Aheong*), 276 B.R. 233, 242-46 (B.A.P. 9th Cir. 2002)). By comparison, "[a] proceeding or claim 'arising in' Title 11 is one that is 'not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.'" *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007) (quoting *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003) (internal quotations omitted)). In other words, a claim "arises in" Title 11 when "'it would have no practical existence but for the bankruptcy.'" *Id.* (quoting *Grausz*, 321 F.3d at 471 (emphasis supplied) (internal quotations omitted)).
>
> Finally, a bankruptcy court may exercise subject matter jurisdiction over any claim "related to" a case under Title 11. To determine whether a claim relates to a case under Title 11, the Fourth Circuit "has adopted the test articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)." *Id.* at 836. Pursuant to that test, a bankruptcy court may exercise "related to" jurisdiction over proceedings, the outcome of which "*could conceivably have any effect on the estate being administered in bankruptcy.*" *Pacor, Inc.*, 743 F.2d at 994 (emphasis supplied). "Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

*Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 459 (E.D. Va. 2019); *see also Bestwall LLC v. Off. Comm. of Asbestos Claimants* (*In re Bestwall LLC*), 71 F.4th 168, 178 (4th Cir. 2023) (reaffirming application of the *Pacor* standard), *cert. denied*, 144 S. Ct. 2519 (2024).

Pursuant to 28 U.S.C. § 157(b)(3), "[t]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding . . . is a proceeding that is otherwise related to a case under title 11." Accordingly, "[t]his Court has the inherent power to

20

question its own jurisdiction in any given case" and may raise the issue of jurisdiction at any time.

*First Nat'l Bank of Maryland v. U.S. Wall Corp.* (*In re Incor, Inc.*), 100 B.R. 790, 793 (Bankr. D.

Md. 1989), *aff'd*, 113 B.R. 212 (D. Md. 1990); *accord New Horizon of NY LLC v. Jacobs*, 231

F.3d 143, 150 (4th Cir. 2000); *McCorkle v. First Pa. Banking & Tr. Co.*, 459 F.2d 243, 244 n.1

(4th Cir. 1972); *see Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377 (1940).

The party asserting subject matter jurisdiction has the burden of proof to establish same. *Demetres*

*v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Toll Rd. Invs. P'ship II, L.P. v. Virginia*,

Civil No. 3:25cv135 (DJN), 2026 WL 1846965, at *3 (E.D. Va. June 26, 2026) (citing *Richmond,*

*Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991)).   Jurisdiction is

determined as of the commencement of the action.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*,

541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824));

*Freeport-McMoran, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *Owens-Illinois, Inc. v.*

*Rapid Am. Corp.* (*In re Celotex Corp.*), 124 F.3d 619, 626 (4th Cir. 1997).   Pursuant to Federal

Rule of Civil Procedure 12(h)(3), as incorporated into the Federal Rules of Bankruptcy Procedure

by Rule 7012(b), the Court must dismiss an adversary proceeding if it determines that it lacks

subject matter jurisdiction.

B.  The Causes of Action Do Not "Arise Under" or "Arise in a Case Under"
the Bankruptcy Code

As set forth in the Order to Show Cause, it is inarguable that the causes of action pursued

in the Complaint do not constitute proceedings "arising under" Title 11, as the asserted claims are

neither created by the Bankruptcy Code nor do they "lack[] existence outside the context of

bankruptcy." *In re Kirkland*, 600 F.3d at 316 (citing *Aheong v. Mellon Mortg. Co.* (*In re Aheong*),

276 B.R. 233, 242-46 (B.A.P. 9th Cir. 2002)); *see also Suntrust Bank v. Roberson* (*In re Baseline*

*Sports, Inc.*), 393 B.R. 105, 121-22 (Bankr. E.D. Va. 2008) ("Jurisdiction for cases 'arising under

21

title 11' refers to those cases in which the Bankruptcy Code itself creates the plaintiff's cause of action or 'if the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal bankruptcy law.'" (quoting *Gates v. Didonato* (*In re Gates*), Adv. Proc. No. 04-1240, 2004 WL 3237345, at *2 (Bankr. E.D. Va. Oct. 20, 2004))).  The sole reference to potential redress under the Bankruptcy Code in the Complaint is 11 U.S.C. § 105(a).  Such provision alone, however, is not the source for any specific relief under the Bankruptcy Code.  Rather, Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  As this Court and countless others have opined, "Section 105(a) may be invoked only in furtherance of the Bankruptcy Code[.]" *James River Petroleum, Inc. v. Dickson* (*In re Dickson*), APN 19-07013-SCS, 2020 WL 6877150, at *27 (Bankr. E.D. Va. Sept. 29, 2020); *see, e.g.*, *Law v. Siegel*, 571 U.S. 415, 421 (2014) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988))); *David v. King*, 109 F.4th 653, 666 (4th Cir. 2024) (citing *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993)).  In other words, Section 105 "does not create a private cause of action unless it is invoked in connection with another section of the Bankruptcy Code, the Bankruptcy Rules, or an order of this Court." *Dabney v. Bank of Am., N.A.* (*In re Dabney*), 613 B.R. 225, 250 (Bankr. D.S.C. 2019) (citing *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 n.1 (6th Cir. 2000); *French v. Am. Gen. Fin. Servs.* (*In re French*), 401 B.R. 295, 313-14 (Bankr. E.D. Tenn. 2009)), *aff'd*, Civil Action No. 2:19-cv-322-BHH, 2021 WL 1105040 (D.S.C. Mar. 23, 2021), *aff'd*, No.

22

21-1468 (4th Cir. Dec. 27, 2022) (per curiam) (unpublished decision).  Accordingly, the Court

cannot employ Section 105 to take any action the Court is not otherwise capable of asserting under

the provisions of Title 11, and Ms. Mahar's reference to such code section within the Complaint

cannot cause the relief sought in the Complaint to "arise under" Title 11 without invocation in

connection with the Bankruptcy Code, Rules or an order of this Court, which she has not pleaded.

Likewise, the Complaint does not embody claims "arising in" a case under Title 11, as such

relief exists and could be pursued outside the confines of the underlying bankruptcy case.  It is of

no moment that the foreclosure on the Property occurred after Ms. Mahar filed her Chapter 7

petition.  As the Fourth Circuit pronounced in the *Valley Historic* case, it is not "sufficient to

establish 'arising in' jurisdiction that a claim . . . arises *during* the pendency of the [case]. . . .  [The

claims] would have existed whether or not the Debtor filed bankruptcy." *Valley Hist.*, 486 F.3d at

836.  Notably, additional support in the record for these conclusions comes from representations

made by Ms. Mahar's counsel at the November 20, 2025 hearing on her Motion for Injunction,

when he confirmed that "the cause of action in this adversary proceeding is a violation of the CFR

regulations.  So this alternative proceeding is not a bankruptcy proceeding *per se*.  It is a proceeding

to say the foreclosure under federal law—not bankruptcy law—federal law was illegal to begin

with . . . ." ECF No. 30, Transcript of Nov. 20, 2025 hearing, at 7.  This statement provides staunch

support as well for the Court's conclusion that the causes of action in the Complaint do not "arise

under" Title 11, despite counsel's assertions that Section 105(a) provides a basis for jurisdiction.

*Id*. at 8 ("[Y]ou have the authority to adjudicate it under [Section] 105, so [*sic*] but this is

completely a federal claim, a district court claim that's before the bankruptcy court under [Section]

105.").  Thus, by her counsel's own statements, Ms. Mahar's claims neither "arise under" the

Bankruptcy Code nor "arise in" the underlying bankruptcy case but, rather, exist and could be pursued outside the context of her bankruptcy.

### C. The Causes of Action Are Not "Related to" a Case Under Title 11

The Court now turns to the third type of proceeding under 28 U.S.C. § 1334(b), those which are "related to cases under title 11." "*Related to* jurisdiction . . . has a special meaning in the law," and "does not mean that the case is related in the ordinary sense of the word 'related.'" *New Horizon*, 231 F.3d at 150 & n.16 (citing Webster's II New Riverside University Dictionary 992 (1988)). Rather, the analysis for "related to" jurisdiction is more nuanced. To reiterate the test employed in this Circuit, the Court may exercise jurisdiction over proceedings "related to" a bankruptcy case only if "*the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) *and* which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (second emphasis added) (citations omitted); *accord In re Bestwall*, 71 F.4th at 178; *New Horizon*, 231 F.3d at 151 (quoting *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255-56 (4th Cir. 1997); citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995)). "This 'test does not require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate.' Instead, '[t]he possibility of such alteration or impact is sufficient to confer jurisdiction.'" *In re Bestwall*, 71 F.4th at 178 (quoting *In re Celotex*, 124 F.3d at 626).

Despite the acknowledged breadth of *Pacor*'s "related to" test, however, it does not provide this Court unbounded jurisdiction. *Celotex*, 514 U.S. at 308 (citing *Bd. of Governors v. MCorp*

24

*Fin., Inc.*, 502 U.S. 32, 40 (1991); *Pacor*, 743 F.2d at 994); *see In re Bestwall*, 71 F.4th at 178.

Consistent with the limited jurisdiction of bankruptcy courts, the Third Circuit Court of Appeals

qualified the expanse of "related to" jurisdiction by emphasizing that "the mere fact that there may

be common issues of fact between a civil proceeding and a controversy involving the bankruptcy

estate does not bring the matter within the scope of section 1471(b)." *Pacor*, 743 F.2d at 994

(referencing 28 U.S.C. § 1471, the predecessor of 28 U.S.C. § 1334(b)); *accord New Horizon*, 231

F.3d at 151 (quoting *Pacor*, 743 F.2d at 994).  Thus, this Court has previously found that "the

'related to' category is not so broad as to encompass litigation of claims arising under state law or

non-bankruptcy Federal law that will not have an effect on the bankruptcy estate, simply because

one of the litigants filed a petition in bankruptcy." *In re Gates*, 2004 WL 3237345, at *2 (citing

*New Horizon*, 231 F.3d at 155).  It is under these strictures that the Court must determine whether

Ms. Mahar's causes of action are "related to" the underlying bankruptcy case so as to confer

subject matter jurisdiction upon this Court to adjudicate them.

### 1. Application of the *Pacor* Test

Regarding the first of the two *Pacor*-required inquiries—whether the outcome could alter

her rights, liabilities, options, or freedom of action—Ms. Mahar cites the possibility that the

transfer of the Property could be invalidated if the foreclosure sale is voided.  Additionally, Ms.

Mahar has prayed in her Complaint that Shellpoint be ordered to review her loan modification

application consistent with applicable federal law.  Both outcomes could possibly alter her rights

and options regarding the Property.  Likewise, the unsuccessful prosecution of her Complaint

could also modify her rights and options.  Thus, the Court finds that Ms. Mahar has satisfied the

first part of the *Pacor* inquiry.

25

The *Pacor* test also requires that the litigation's outcome could, in any way, impact the handling and administration of the bankruptcy estate. In this regard, Ms. Mahar argues that the foreclosure sale on the Property and related deed recordation occurred while this Court had jurisdiction over the Property. She further maintains that the Chapter 7 Trustee's declaration that there may be assets for distribution to creditors,[15] combined with the Court's earlier determination that the causes of action embodied in the Complaint were property of the bankruptcy estate,[16] provides the necessary bases for "related to" jurisdiction. Ms. Mahar asserts her argument is unaffected by the Chapter 7 Trustee's subsequent abandonment[17] of both the Property and the causes of action in the Complaint because the events in question occurred while the trustee was administering the bankruptcy estate and, if she is successful, the trustee could "determine that proceeds or the [Property] could be property of the estate." ECF No. 55, at 2.

Ms. Mahar's asserted bases for "related to" jurisdiction would require the Court to make an incongruous leap in the *Pacor* analysis. *Pacor* requires a showing of the possibility that the action could "in any way impact[] upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994. Such impacts are generally found to exist if an action affects "the amount of property available for distribution or the allocation of property among creditors." *Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987) (citing *Uranga v. Geib (In re Paso Del Norte Oil Co.)*, 755 F.2d 421, 425 (5th Cir. 1985); *Pacor*, 743 F.2d at 994-96); *see also Vieira v. AGM, II, LLC*, 363 B.R. 746, 750 (D.S.C. 2007) (citing *Bergstrom v. Dalkon Shield Claimants Tr. (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996); *Premium of Am.,*

---

[15] *See* Case No. 25-72454-SCS, ECF No. 30, Request for Asset Notice, filed Nov. 11, 2025.

[16] *See Mahar II*, 2026 WL 173351, at *8 (determining that causes of action were part of the bankruptcy estate under 11 U.S.C. § 541(a)).

[17] *See* Case No. 25-72454-SCS, ECF No. 48, Notice of Intent to Abandon, filed Jan. 28, 2026.

*LLC v. Sanchez* (*In re Premium Escrow Servs.*), 342 B.R. 390, 396 (Bankr. D.D.C. 2006)); *Matson*

*v. Rescue Rangers, LLC* (*In re Rescue Rangers, LLC*), 582 B.R. 669, 673 (Bankr. E.D. Va. 2018);

*Grimes v. First-Citizens Bank & Tr. Co.* (*In re Grimes*), 388 B.R. 195, 201 (Bankr. N.D. W. Va.

2008) (citing *In re Xonics*, 813 F.2d at 131); *Branch Banking & Tr. Co. v. White* (*In re Eaton Ferry*

*Sales & Serv., Inc.*), Adv. No. 06-9027, 2006 WL 3762002, at *1 (Bankr. M.D.N.C. Dec. 19,

2006). Thus, *Pacor* necessitates far more than establishing either an asset's existence as property

of the bankruptcy estate (as this Court earlier concluded), that events took place post-petition,[18] or

that the Chapter 7 Trustee is administering the estate. *Pacor*, 743 F.2d at 994 (referencing the

predecessor of 28 U.S.C. § 1334(b)).

Ms. Mahar has failed to demonstrate, and the Court is unconvinced, that the causes of

action asserted here could possibly impact the handling and administration of the bankruptcy estate

in any way in satisfaction of the conjunctive *Pacor* test. Most prominently, even if Ms. Mahar

litigates the Complaint to a successful conclusion, she has failed to show, and the Court cannot

conceive, how any of the remedies sought in the Complaint would possibly alter either creditor

distributions, the value of any assets that remain part of the bankruptcy estate to be administered

by the Chapter 7 Trustee, or any other aspect of the handling or administration of the underlying

bankruptcy case. First, and most obvious from the face of the Complaint, Ms. Mahar has not

prayed for any monetary damages, a point conceded by her counsel.[19] Tr. at 32. Thus, setting

aside that the Chapter 7 Trustee has abandoned any interest the estate may have in both these

---

[18] While it is true that the foreclosure sale and deed recordation occurred post-petition, it is also true that no automatic stay was in place, a fact that Ms. Mahar acknowledges. Complaint, at 2. As referenced in n.5, *supra*, Ms. Mahar admitted during the *Mahar I* proceeding that the automatic stay did not arise as to the Chapter 7 Trustee.

[19] Paragraph 17 of the Complaint indicates that Ms. Mahar "has suffered actual damages including loss of home, emotional distress, and legal costs" but makes no specific request for a monetary award. *See id*. ¶¶ 17, prayer.

27

causes of action and the Property (which the Court further addresses below), there would be no funds awarded that could possibly augment the bankruptcy estate. Likewise, none of the pleadings or Ms. Mahar's arguments in response to the Order to Show Cause indicates any potential change in the value of the remaining estate property; that any money would flow out of, or new claims would arise against, the estate; or that any currently lodged claims would increase or decrease in amount as a consequence of litigating the Complaint.[20]

Second, Ms. Mahar has not requested avoidance of the lien on the Property[21] if title is restored to her, and there was no apparent equity in the Property at the commencement of this adversary proceeding that would have caused the Chapter 7 Trustee to liquidate it for the benefit of creditors.[22] As recited in *Mahar II*, based upon Ms. Mahar's bankruptcy schedules, the balance of the loan on the Property was $1,353,261.30,[23] which exceeds the Property's scheduled value of $1,195,700.00. *Mahar II*, 2026 WL 173351, at *2 n.8 (citing Case No. 25-72454-SCS, ECF No. 1, Voluntary Petition, Schedules, and Statements, at 10, 23).[24] Despite the representations in her

---

[20] As set forth above, if any personal liability as to the Property remained following Ms. Mahar's receipt of her Chapter 7 discharge in Case No. 14-73422-FJS on January 12, 2015, such was extinguished by her discharge in the underlying bankruptcy case here. *See supra* n.9.

[21] The Court further noted in *Mahar II* that "Ms. Mahar does not indicate the debt owed on the Property is contingent, unliquidated, or disputed." *Mahar II*, 2026 WL 173351, at *2 n.8 (citing Case No. 25-72454-SCS, ECF No. 1, Voluntary Petition, Schedules, and Statements, at 23).

[22] The Court notes Ms. Mahar's representation that the Chapter 7 Trustee's declaration of potential assets available for distribution in this case was triggered not by the Property or the instant proceeding, but rather, by her non-exempt shares of stock. ECF. No. 55, at 2 n.1.

[23] The actual claim amount may exceed the loan balance asserted by Ms. Mahar in her schedules. In *Mahar I*, the Court noted that counsel for Shellpoint indicated the loan balance exceeds $2 million per the proof of claim filed in Ms. Mahar's most recent previous case, Case No. 25-70412-FJS. *Mahar I*, 2025 WL 6455616, at *2 n.5 (citing Case No. 25-70412-FJS, Claim No. 8-1, filed May 9, 2025 (asserting total claim of $2,050,466.75 as of the Feb. 28, 2025 petition date of that case)).

[24] The Chapter 7 Trustee confirmed the non-existent equity in his abandonment notice, where he indicated that "there are liens against said property of greater value than the property itself[.]" *See* Case No. 25-72454-SCS, ECF No. 48, Notice of Intent to Abandon, at 1.

28

schedules, though, Ms. Mahar's counsel insisted at the March 26, 2026 hearings that if she succeeds on her Complaint and recovers the Property, the Chapter 7 Trustee could pursue a sale of the Property at a price lower than the amount of the debt it secures (commonly known as a "short sale").  Ms. Mahar's reasoning is grounded upon the apparent successful bid amount at the foreclosure sale of $950,000.00.  Tr. at 32.[25]  As the Defendants correctly point out, however, this assertion presumes the lender's agreement to such transaction, and there has been no evidence or argument that such consent by the lender would materialize.  *See Hackman v. Nationstar Mortg., LLC* (*In re Hackman*), 563 B.R. 812, 817-18 (Bankr. E.D. Va. 2017) (finding that proposed short sale was "inconsistent with the express terms of the Note and Deed of Trust" and that the lender "was entitled to refuse to release its lien on the Property absent payment in full").  This proffered series of hypotheticals is highly speculative as to any possible future action of the lender and unknown potential purchasers and thus is much too tenuous to satisfy the second part of the *Pacor* test.  Accordingly, the lack of potential pecuniary recovery; the uncontested status, and the lender's retention of, the lien on the Property through at least the date of foreclosure; as well as the lack of equity in the Property demonstrates the absence of possible effect on the estate in the event Ms. Mahar is successful on her claims.

Ms. Mahar also urges the Court to distinguish the instant matter from four specific cases originating in both this Court and the Bankruptcy Court for the Western District of Virginia, where the respective courts declined to find that estate administration would be impacted.  ECF No. 55, at 3 (citing generally *Brooks v. U.S. Dep't of Hous. and Urb. Dev.* (*In re Brooks*), A.P. No. 17-07031, 2017 WL 6016297 (Bankr. W.D. Va. Dec. 4, 2017); *Harlan v. Rosenberg & Assocs., LLC*

---

[25] Counsel for Ms. Mahar earlier referenced the foreclosure sales price as $977,000.00.  *See* Case No. 25-72454-SCS, ECF No. 27, Memorandum of Law in Support of Debtor's Standing and Analysis of Automatic Stay Under 11 U.S.C. § 362(c)(4), filed Oct. 31, 2025, at 1.

(*In re Harlan*), 402 B.R. 703 (Bankr. W.D. Va. 2009); *Suntrust Bank v. Roberson* (*In re Baseline Sports, Inc.*), 393 B.R. 105 (Bankr. E.D. Va. 2008); *Huennekens v. Walker* (*In re S. Int'l Co.*), 165 B.R. 815 (Bankr. E.D. Va. 1994)).  Ms. Mahar proffers that the four noted cases were filed either post-abandonment or post-confirmation, and/or involved proceedings that could not affect estate administration or distributions to creditors.  *Id*.  In contrast, Ms. Mahar asserts that the jurisdictional test was met here when the Complaint was filed, including because this action was initiated while the causes of action were property of the bankruptcy estate.  *Id*.  These arguments fall short of sufficient reasoning to satisfy *Pacor*'s second requirement for the reasons stated above. While the adversary proceedings in the four noted cases originated at various points in the lifespan of the underlying bankruptcy cases as compared to the instant matter, the requisite analysis is not purely temporal, but rather, requires the fact- and case-specific analysis that the Court has undertaken here.  Ms. Mahar also offers that the prior litigation of this proceeding before this Court supports finding that subject matter jurisdiction exists.  *Id*.  That the Court has previously opined in this case incorrectly focuses the analysis on procedural history, which has no bearing on the existence of subject matter jurisdiction.  The prior opinion in this adversary proceeding (as well as the one issued in the underlying bankruptcy case) addressed the much more discrete and nonmeritorious issue of standing.  It is unquestionable that the Court is obligated to dispose of jurisdictional and procedural matters before reaching the merits of a case or controversy, and the Court, as is its duty, adjudicated these matters accordingly.  The Court's fulfillment of its duties cannot serve to provide jurisdiction.

2.  The Trustee's Abandonment of Property and Causes of Action Does Not Affect the Analysis of Subject Matter Jurisdiction

Ms. Mahar also argues that this case has not been "fully consummated," "bankruptcy interests remain," and the Chapter 7 Trustee's abandonment of the estate's interests in the Property

and the causes of action neither retroactively affects, nor automatically divests, this Court of jurisdiction. *Id*. at 2-3. Ms. Mahar relies on the holding in *Sharif v. IndyMac Bank* (*In re Sharif*), 411 B.R. 276 (Bankr. E.D. Va. 2008), to exemplify the latter proposition. While Ms. Mahar's statement of the law is correct,[26] the Court has concluded that Ms. Mahar has failed to establish that "related to" jurisdiction existed at the time the Complaint was filed for reasons unrelated to the Chapter 7 Trustee's abandonment of the Property and these causes of action. Nonetheless, because Ms. Mahar has made these additional arguments regarding the potential administration of the Property if recovered via successful prosecution of her causes of action, a discussion regarding abandonment is necessary.

Section 554 provides that a "trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Abandonment of assets protects the bankruptcy estate by avoiding the use of scarce resources to administer property that will provide no benefit to unsecured creditors. *In re Wilton Armetale, Inc.*, 618 B.R. 424, 432 (Bankr. E.D. Pa. 2020) (citing *In re Paolella*, 79 B.R. 607, 609 (Bankr. E.D. Pa. 1987)). "Property abandoned under [Section 554] ceases to be part of the estate. It reverts to the debtor and stands as if no bankruptcy petition was filed. . . . Abandoned property is *not* property administered by the estate." *Dewsnup v. Timm* (*In re Dewsnup*), 908 F.2d 588, 590 (10th Cir. 1990) (citations omitted), *aff'd*, 502 U.S. 410 (1992).

Even if an asset has been abandoned, though, litigation involving such asset may remain subject to the Court's jurisdiction. In *In re Sharif*, the discharged debtor sought to invalidate the defendant's lien on property the chapter 7 trustee abandoned while the litigation was pending. *In*

---

[26] *See In re Celotex*, 124 F.3d at 626 (citing *Freeport-McMoran, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)) (finding that subsequent events do not divest a court of subject matter jurisdiction that existed when the action commenced).

31

*re Sharif*, 411 B.R. at 279.   Judge Mitchell found that the litigation neither arose under the Bankruptcy Code nor did it arise in a bankruptcy case.  *Id*. at 281.  Employing the *Pacor* test, Judge Mitchell concluded that, despite the debtor's discharge and the trustee's abandonment of the property, whether the defendant was a secured creditor could affect the distribution it and other creditors were entitled to receive as the trustee continued his administration of the bankruptcy estate.  *Id*.  Accordingly, Judge Mitchell found that the proceeding was sufficiently "related to" the bankruptcy case, and subject matter jurisdiction existed.[27]  *Id*.

The instant factual circumstances stand in contrast to those addressed by Judge Mitchell in *In re Sharif*.  As stated above, Ms. Mahar has neither sought to avoid the lien in the event title to the Property is restored to her nor, more importantly, has she satisfied her burden to show how this proceeding could possibly impact the handling and administration of the bankruptcy estate.  While it is correct that the trustee has not yet concluded his administration of the remaining estate property, he has determined that the Property and the causes of action are of no consequential value to the estate.  No objections were filed to the Notice of Intent to Abandon within the requisite response period,[28] and accordingly, pursuant to the notice, the enumerated assets are now abandoned to Ms. Mahar.  *See In re Ryan-Jones*, 561 B.R. 380, 381 n.2 (Bankr. E.D. Va. 2016) (deeming property abandoned since no objection was filed to the trustee's notice of abandonment); *In re Preston*, 82 B.R. 28, 30 (Bankr. W.D. Va. 1987) (finding property is considered abandoned, without entry of order, if no objection is filed to notice of abandonment).  Whether abandoned or not, unlike *Sharif*, Ms. Mahar's litigation cannot affect the distributions to creditors in her case or

---

[27] Judge Mitchell expressly ruled that the Court had subject matter jurisdiction in that matter only if the debtor's non-filing spouse was added as a plaintiff to the action.  *In re Sharif*, 411 B.R. at 278, 282.

[28] Federal Rule of Bankruptcy Procedure 6007(a) requires a hearing only where an objection to a notice of abandonment is filed.

otherwise impact the handling or administration of the estate in any discernible way for the reasons stated above and thus provides no basis for "related to" jurisdiction.

Further, even if the sale is vacated or Ms. Mahar is otherwise successful with one of more of her causes of action, the possibility that the Property or any resulting benefits from the causes of action will reenter the bankruptcy estate post-abandonment is extremely suppositional at best. Ms. Mahar's speculation to the contrary ignores the business judgment already exercised by the Chapter 7 Trustee, as he has represented that the enumerated assets were abandoned "on the grounds that there are liens against said property of greater value than the property itself and/or that the Trustee believes that any attempt at liquidation by the Trustee would fail." Case No. 25-72454-SCS, ECF No. 48 (referencing the Property and causes of action comprising the instant Complaint). Moreover, Ms. Mahar's conjecture overlooks long-standing precedent in this Court and countless others that, with very limited exceptions that do not appear applicable here based upon the record currently before the Court,[29] "abandonment of an asset by a trustee is irrevocable," even if the trustee later discovers that the value of the abandoned property was greater than

---

[29] As Judge Bostetter recognized,

> There are but two principal exceptions to the above-referenced rule of irrevocability of abandonment under applicable law. Property will not be deemed to have been abandoned by the trustee where it was actually concealed from him or where his knowledge of the existence of the property was one of mere suspicion, which engendered only a cursory investigation. The rule also is not applicable in those situations where the property is unscheduled by the debtor, thus preventing the trustee from having "knowledge, or sufficient means of knowledge, of its existence."

*In re Sutton*, 10 B.R. 737, 740 (Bankr. E.D. Va. 1981) (quoting *Dushane v. Beall*, 161 U.S. 513, 518 (1896)). While the trustee in *Sutton* asserted a purported third exception of "unintentional abandonment," (*id*.), as this Court concluded in *In re Parson*, "[e]ven if this is a valid exception to the irrevocability of abandonment, there is nothing in this case to suggest that the abandonment here by the Chapter 7 Trustee was other than fully intentional[.]" *In re Parson*, 2007 WL 3306678, at *9 n.5.

33

anticipated. *In re Parson*, No. 01-73786-SCS, 2007 WL 3306678, at \*8 (Bankr. E.D. Va. Nov. 6, 2007) (citing *In re Sutton*, 10 B.R. 737, 739-40 (Bankr. E.D. Va. 1981), and collecting cases from numerous circuits reaching conclusions in accord with *In re Sutton*); *see also, e.g.*, *In re Clary*, 440 B.R. 122, 124 (Bankr. E.D. Va. 2010) ("The judgment as to whether property should be administered or abandoned is made by the trustee during the course of the case and is final except in extraordinary circumstances."); *In re Locklair*, No. 03-50924, 2006 WL 1491440, at \*2 (Bankr. M.D.N.C. May 18, 2006) (citing generally *In re Sutton*, 10 B.R. 737 (Bankr. E.D. Va. 1981)) (denying Chapter 7 trustee's motion to reopen case filed two years after case closure and finding that "discovery that an abandoned asset has a value which is greater than what the trustee initially believed, after a reasonable opportunity to investigate such asset, is not grounds to revoke an abandonment").[30]    Therefore, to the extent intended as support for her position under the conjunctive *Pacor* test, Ms. Mahar's argument that the Property or the fruits of her causes of action may reenter the bankruptcy estate upon successful prosecution of the instant matter is unavailing.

D.  Subject Matter Jurisdiction Does Not Arise Pursuant to 28 U.S.C. § 1334(e)

While not explicitly argued, Ms. Mahar seems to suggest that this Court has jurisdiction to adjudicate the Complaint because the causes of action were property of the bankruptcy estate at the time the Complaint was filed, perhaps in an attempt to invoke 28 U.S.C. § 1334(e).  That section provides:

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

---

[30] The Court includes the discussion regarding the general irrevocability of abandonment not as an advisory opinion, but rather, to underscore the ineffectual nature of Ms. Mahar's jurisdictional theory.

34

(2) over all claims or causes of action that involve construction of
section 327 of title 11, United States Code, or rules relating to
disclosure requirements under section 327.

Jurisdiction pursuant to 28 U.S.C. § 1334(e) is "conceptually distinct" from that of 28

U.S.C. § 1334(b). *Valley Hist. Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 837 (4th Cir. 2007).

The latter "invests district courts with original but not exclusive jurisdiction over 'civil

proceedings.'" *Id*. The former, however, provides the United States District Court (and in turn,

this Court under 28 U.S.C. § 157(a)), "a broad grant of exclusive jurisdiction over a debtor's

property; it does not invest district courts with jurisdiction to conduct civil proceedings. Instead,

. . . it creates exclusive jurisdiction over 'property' for a limited period of time[.]" *Id*. Thus,

because "§ 1334(e) does not by itself create jurisdiction to conduct civil proceedings[,]"

jurisdiction must be established under 28 U.S.C. § 1334(b). *Id*. at 838.

Judge Teel applied the Fourth Circuit's reasoning and rationale concerning Section 1334(e)

in *Ostroff v. American Home Mortgage* (*In re Ostroff*), 433 B.R. 442 (Bankr. D.D.C. 2010). In

*Ostroff*, the debtors sought the determination of the validity of a deed of trust for property that was

part of the bankruptcy estate when the Chapter 7 case was filed but was later adjudicated exempt.

*Id*. at 443-44, 448, 452. Judge Teel explained that the purpose of 28 U.S.C. § 1334(e) is to "divest[]

any other court of the authority to take jurisdiction over the res being administered by the trustee

for the benefit of unsecured creditors." *Id*. at 452: *accord Porretto v. City of Galveston Park Bd.*

*of Trs.*, 113 F.4th 469, 484 (5th Cir. 2024) (discussing *In re Ostroff*); *Smith v. McLeskey* (*In re Bay*

*Vista of Va., Inc.*), 394 B.R. 820, 829-30 (Bankr. E.D. Va. 2008) (citing *Williams v. Sears, Roebuck*

*& Co.* (*In re Williams*), 244 B.R. 858, 866 (S.D. Ga. 2000), *aff'd*, 34 F. App'x 967 (11th Cir.

2002); *AG Indus., Inc. v. AK Steel Corp.* (*In re AG Indus., Inc.*), 279 B.R. 534, 539 (Bankr. S.D.

Ohio 2002)). Relying upon the *Valley Historic* decision, Judge Teel concluded that even if the

35

Court had jurisdiction over the debtors' property pursuant to 28 U.S.C. § 1334(e) (which it specifically determined it did not, given the earlier exemption decision), such jurisdiction "[did] not equate to jurisdiction under § 1334(b) over a proceeding that relates to such property." *In re Ostroff*, 433 B.R. at 453; *accord Toledo Dávila v. Luna Residential II, LLC* (*In re Toledo Dávila*), 671 B.R. 335, 342 (B.A.P. 1st Cir. 2025) ("[W]e are unwilling to construe § 1334(e) as providing an independent basis for bankruptcy jurisdiction when subject matter jurisdiction is lacking under § 1334(a) and (b).").

Accordingly, guided by the *Valley Historic* decision of the Fourth Circuit Court of Appeals and finding the reasoning in *In re Ostroff* to be sound, the Court concludes that 28 U.S.C. § 1334(e) does not provide a substitute basis for subject matter jurisdiction in place of 28 U.S.C. § 1334(b). Thus, any argument by Ms. Mahar that subject matter jurisdiction here is supported by 28 U.S.C. § 1334(e) fails.

### E. Summary

The Court finds that Ms. Mahar has failed to satisfy her burden to show cause why subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) existed at the time the Complaint was filed. The Court concludes that the causes of action do not "arise under" the Bankruptcy Code, in part because 11 U.S.C. § 105(a) does not create an independent source of relief. Further, the Court finds that the causes of action neither "arise in" nor are they "related to" a case under the Bankruptcy Code for the reasons stated herein. Such analysis is unaffected by the Chapter 7 Trustee's subsequent abandonment of the Property and causes of action. Finally, 28 U.S.C. § 1334(e) cannot supply subject matter jurisdiction. Accordingly, the Court finds that the Complaint must be dismissed as provided for by Federal Rule of Civil Procedure 12(h)(3), as incorporated

36

into the Federal Rules of Bankruptcy Procedure by Rule 7012(b).[31] The Court finds dismissal without prejudice is required because "a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (citing Fed. R. Civ. P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998); *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 222 (4th Cir. 2001)). The Order entered contemporaneously with this Memorandum Opinion will so provide. The Court expresses no opinion concerning the merits of the claims in the underlying Complaint.

## V. Remaining Matters

Based upon the Court's determination that Ms. Mahar's Complaint must be dismissed without prejudice for lack of subject matter jurisdiction pursuant to the Order to Show Cause, the Court finds that the Defendants' Motion to Dismiss should be deemed moot. The Court further finds that Ms. Mahar's Motion to Reconsider should also be deemed moot.

## VI. Conclusion

Ms. Mahar has failed to demonstrate how the successful prosecution of her Complaint could possibly impact the handling and administration of the bankruptcy estate. Further, Ms. Mahar attempts to create the illusion of "related to" jurisdiction by urging the Court to adopt hypothetical scenarios for which she provides no support. Mindful that *Pacor* does not require certain or likely impact upon the administration or handling of a case, even the "conceivable effect"

---

[31] As the Court does not have subject matter jurisdiction, the Court cannot consider the issue of permissive abstention noted in the Order to Show Cause. *In re Brown*, Adv. No. 12-2059, 2013 WL 1010359, at *6 (Bankr. S.D. Ohio Mar. 14, 2013) (citing 28 U.S.C. § 1334(c)) ("[T]he doctrines of permissive and mandatory abstention come into play only when a bankruptcy court has subject-matter jurisdiction in the first instance.").

test has its limits.   Those limits are exceeded when a plaintiff fails to sustain their burden to establish subject matter jurisdiction and instead presents only unsupported hypotheticals that fail to embrace the realities present in the underlying bankruptcy case when the complaint was filed. At its base, the instant proceeding is purely a two-party dispute for which this Court does not have subject matter jurisdiction, as its outcome will not affect the administration of the bankruptcy estate.

A separate Order will be contemporaneously issued consistent with this Memorandum Opinion.

The Clerk shall deliver copies of this Memorandum Opinion to counsel for the Plaintiff; counsel for the Defendants; and the Chapter 7 Trustee in the underlying bankruptcy case.

IT IS SO ORDERED.

Entered this **31st day** of **July, 2026**, at Norfolk, in the Eastern District of Virginia.

/s/ Stephen C St-John

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

Entered On Docket: July 31, 2026